911 A.2d 72 (2006)
389 N.J. Super. 44
Charles P. ENGLERT, Jr., and Carol Englert, his wife, Plaintiffs,
v.
THE HOME DEPOT, Defendant, and
C. Raimondo & Sons Construction, Defendant-Respondent, and
Weir Welding Company, Inc., Defendant-Appellant, and
C. Raimondo & Sons Construction, Third-Party Plaintiff/Respondent,
v.
Weir Welding Company, Inc., Third-Party Defendant/Appellant, and
Travelers Indemnity Company, Third-Party Defendant/Cross-Respondent, and
Weir Welding Company, Inc., Fourth-Party Plaintiff,
v.
East Rutherford Steel Erectors, Fourth-Party Defendant, and
Travellers Indemnity Company, Fourth-Party Plaintiff/Cross-Respondent,
v.
Liberty Mutual Insurance Company, Fourth Party Defendant/Respondent/Cross-Appellant, and
Chubb Insurance Company of New Jersey, Intervenor/Respondent.
Superior Court of New Jersey, Appellate Division.
Argued February 8, 2006.
Decided August 30, 2006.
*73 Ernest W. Schoellkopff, Roseland, argued the cause for appellant Weir Welding Company, Inc. (Connell, Foley, attorneys; Mr. Schoellkopff, of counsel and on the brief).
Mario C. Colitti, argued the cause for respondent C. Raimondo & Sons Construction (Sherman & Viscomi, attorneys; Mr. Colitti, on the brief).
William J. Martin, Westmont, argued the cause for respondent/cross-appellant Liberty Mutual Insurance Company (Martin, Gunn, & Martin, attorneys; Dana C. Argeris, of counsel; Peter V. Koenig, on the brief).
John G. Tinker, Jr., Cedar Knolls, argued the cause for cross-respondent Travelers Indemnity Company (Leary, Bride, Tinker & Moran, attorneys; Mr. Tinker, on the brief).
Robinson, Burns & McCarthy, Bridgewater, attorneys for intervenor Chubb Insurance Company (Patrick A. Robinson, of counsel; Mr. Robinson and Patrick S. Espey on the brief).
Before Judges WECKER, FUENTES and GRAVES.
The opinion of the court was delivered by
WECKER, J.A.D.
In this appeal, we address indemnification provisions in a form construction contract and conclude that they do not clearly provide for indemnification for a party's own negligence. We also address an insurance coverage issue.
Defendant Weir Welding Company, Inc. appeals from a judgment obligating it to pay the entirety of a $2,350,000 settlement accepted by plaintiffs Charles and Carol Englert from defendant C. Raimondo & Sons Construction. The settlement was to compensate plaintiffs for injuries Charles Englert sustained as a result of a construction *74 site accident.[1] Weir challenges the trial judge's interpretation of certain contractual indemnification provisions in the sub-contract between it and Raimondo that led to the judgment requiring Weir to indemnify Raimondo for the full amount of the settlement with plaintiff and for Raimondo's counsel fees incurred in defending the litigation. In its conditional cross-appeal, Liberty Mutual Insurance Company argues that the trial judge erred in determining that the commercial general liability (CGL) policy it issued to Raimondo provided primary rather than excess insurance coverage. We reverse on Weir's appeal respecting the scope of its obligation to indemnify Raimondo, affirm on Liberty's cross-appeal, and remand.
These are the facts relevant to the issues before us. On June 1, 1998, Raimondo entered into a contract with defendant The Home Depot, whereby Raimondo agreed to serve as general contractor for the construction of a new Home Depot store in Riverdale, New Jersey. By sub-contract dated July 17, 1998, Raimondo retained Weir to "furnish all union labor, material, equipment, hoist, transportation . . . [and] protection and safety measures required to perform the structural steel . . . work for th[e] project[,]" including all erection work. According to Article 11 of their sub-contract, entitled "Indemnification," Weir further agreed:
[T]o the fullest extent permitted by law, [Weir] shall indemnify and hold harmless [Home Depot] . . . and [Raimondo] and all of their agents and employees from and against all claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of [Weir's] Work under this Sub-contract, provided that any such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, to the extent caused in whole or in part by any negligent act or omission of [Weir] or anyone directly or indirectly employed by [Weir] or anyone for whose acts [Weir] may be liable, regardless of whether it is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Paragraph.
[All emphasis added.]
The two critical phrases of Article 11 for purpose of this appeal are "to the extent caused" and "regardless of."
The Raimondo-Weir sub-contract, which was drafted by Raimondo, included a separate and different indemnification provision in Rider D. Rider D initially set forth the various types of insurance Weir was obligated to provide for Raimondo's protection; but in paragraph 5, Rider D also provided:
Weir . . . shall indemnify, defend, and hold harmless . . . Raimondo . . . against any and all claims and demands of any nature whatsoever including, without limiting the generality of the foregoing, claims for consequential damages, loss of profits and damage to property of Raimondo including costs, litigation expenses, counsel fees and liability incurred in connection therewith, arising out of injury or death of, any person whatsoever or damage to property of any kind by *75 whomsoever owned, caused in whole or in part by the acts or omission of [Weir], any subsubcontracts [sic] vendor, materialman, or any other person directly or indirectly employed by [Weir], or any of them while engaged in the performance of the Work or any activity associated therewith or relative thereto.

[Emphasis added.]
Ambiguities within the indemnification provision of Article 11, as well as inconsistency between Article 11 and Rider D, do not demonstrate the required clear and unequivocal intention for Raimondo to be indemnified for its own share of negligence. See Azurak v. Corporate Prop. Investors, 175 N.J. 110, 814 A.2d 600 (2003), aff'g o.b., 347 N.J.Super. 516, 790 A.2d 956 (App.Div.2002); Mantilla v. NC Mall Assocs., 167 N.J. 262, 770 A.2d 1144 (2001); Ramos v. Browning Ferris Indus. of S. Jersey, Inc., 103 N.J. 177, 510 A.2d 1152 (1986).
Weir's business was primarily structural steel fabrication; it sub-sub-contracted with plaintiff's employer, defendant East Rutherford Steel Erectors, to erect its fabricated steel at the Home Depot site. Pursuant to Weir's purchase order, East Rutherford agreed to perform the steel work in accordance with the terms and conditions contained in the Raimondo-Weir contract. Charles Englert was one of East Rutherford's employee steel workers. At the time of the accident, he was welding structural steel components at a height of nearly thirty feet above ground. While moving from one beam to another, wearing no safety harness and not otherwise protected by a net or other equipment, Englert slipped and fell, sustaining serious injuries.
In pretrial motions, the parties sought resolution of the indemnification and coverage issues. Early on, the motion judge held that Weir was required to indemnify Raimondo unless a jury later found Raimondo solely negligent for plaintiff's injuries; N.J.S.A. 2A:40A-1 prohibits indemnification for "damages . . . caused by . . . the sole negligence" of the indemnitee. The judge also determined that Liberty's policy provided primary coverage to Raimondo, and a Travelers Indemnity Company CGL policy issued to Weir, naming Raimondo as "an additional insured," was excess with respect to the Englert claim. Weir and Travelers unsuccessfully moved for reconsideration of the order requiring full indemnification to Raimondo, and Raimondo and Liberty moved for reconsideration of the order requiring Liberty to provide primary coverage. Both motions were denied. Liberty and Weir filed separate motions for leave to appeal the rulings. Although this court initially granted leave to appeal, we subsequently dismissed both interlocutory appeals as improvidently granted.
In the meantime, an order was entered on January 7, 2002, memorializing Raimondo's agreement with plaintiffs to settle their claims for $2.35 million. Under that agreement, Liberty agreed to pay $1 million to plaintiff; plaintiff agreed to defer receipt of the remainder of the settlement until after resolution of Raimondo's and Liberty's claims for insurance coverage, contribution, and indemnification against Weir and Travelers. Liberty, Travelers, and Chubb agreed to the settlement; Weir did not agree to "the amount or reasonableness" of the settlement. Proceedings on the above-described pretrial motions and the subsequently dismissed interlocutory appeal apparently consumed the better part of the next two years.
On the eve of trial, by order filed on March 25, 2004, the trial judge denied Weir's late motion for summary judgment on the indemnification issue, which had *76 previously been ruled on more than once. The liability trial proceeded for several days in March and April 2004, and on April 6, 2004, the jury found Weir twenty-five percent, Raimondo fifteen percent, and East Rutherford sixty percent responsible for plaintiff's accident.[2] The judge entered an order directing Weir to indemnify Raimondo for the entire settlement, plus Raimondo's reasonable attorneys' fees and costs. A subsequent order determined fees and costs to be approximately $88,000. Weir's motion for a new trial was denied.
If Weir prevails, Raimondo is liable for fifteen percent of the settlement, $352,500, and Weir is responsible for the remaining eighty-five percent, $1,997,500. If Raimondo prevails, Weir is liable for the entire $2.35 million settlement, as well as Raimondo's fees and costs.

I
On appeal, Weir presents these arguments:
POINT I
THE RAIMONDO INDEMNITY DOES NOT CONTAIN AN UNEQUIVOCAL EXPRESSION OF AN INTENTION TO INDEMNIFY RAIMONDO FOR ITS OWN NEGLIGENCE.
POINT II
THE TRIAL JUDGE ERRONEOUSLY SUBMITTED THE NEGLIGENCE OF THE PLAINTIFF'S EMPLOYER, EAST RUTHERFORD STEEL ERECTORS, FOR CONSIDERATION AND APPORTIONMENT BY TO [sic] THE JURY, CONTRARY TO RAMOS V. BROWNING FERRIS INDUSTRIES, 103 N.J. 177, 191, 510 A.2d 1152 (1986).
POINT III
THE TRIAL JUDGE ERRONEOUSLY PERMITTED THEODORE GUIS TO GIVE TESTIMONY, INCLUDING INADMISSIBLE NET OPINION, AS AN EXPERT WITNESS WITHOUT THE REQUISITE QUALIFICATION AND SUPPORTING FACTS.
POINT IV
RAIMONDO SO FAILED TO MEET ITS BURDEN OF PROOF THAT WEIR WELDING WAS ENTITLED TO JUDGMENT AT THE CONCLUSION OF RAIMONDO'S PROOFS AND AT THE CLOSE OF ALL EVIDENCE, OR, ALTERNATIVELY, A NEW TRIAL.
POINT V
THE TRIAL COURT PREJUDICIALLY CONFUSED THE ISSUES OF NEGLIGENCE AND PROXIMATE CAUSE IN ITS JURY INTERROGATORIES, AND ERRONEOUSLY CHARGED THE JURY ON RAIMONDO'S BURDEN OF PROOF AND ON OSHA REGULATIONS ALTHOUGH THEIR APPLICABILITY HAD NOT BEEN ESTABLISHED.
POINT VI
THE AWARD OF COUNSEL FEES AND COSTS WAS BEYOND THE SCOPE OF THE RAIMONDO INDEMNITY AGREEMENT AND LACKED THE SUPPORT REQUIRED BY R. 4:42-9(B) AND RPC 1.5(A).
We have reviewed the record in light of the contentions of the parties on these issues, and find insufficient merit in Points II, III, IV, and V to warrant discussion in *77 this opinion. See R. 2:11-3(e)(1)(E). We now address Points I and VI of Weir's argument.

I
The law respecting contractual indemnification for an indemnitee's own negligence is governed by the principles set forth in Azurak v. Corporate Prop. Investors, supra, 175 N.J. 110, 814 A.2d 600, and Mantilla v. NC Mall Assocs., supra, 167 N.J. 262, 770 A.2d 1144, reaffirming certain principles earlier set forth in Ramos v. Browning Ferris Indus. of S. Jersey, Inc., supra, 103 N.J. 177, 510 A.2d 1152. Azurak, supra, 175 N.J. at 111-12, 814 A.2d 600; Mantilla, supra, 167 N.J. at 272-73, 770 A.2d 1144. In Ramos, the Court said:
Indemnity contracts are interpreted in accordance with the rules governing the construction of contracts generally. When the meaning of the clause is ambiguous, however, the clause should be strictly construed against the indemnitee. Thus, a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms.
[Ramos, supra, 103 N.J. at 191-92, 510 A.2d 1152 (internal citations omitted).]
The disputed issue before us concerns the application of those principles to the facts at hand.
In Azurak, this court quoted Ramos and expressly followed its principles. Azurak, supra, 347 N.J.Super. at 520-21, 790 A.2d 956. The indemnification language at issue in Azurak did not include either of the two critical, disputed phrases that appear in Article 11 of the Raimondo-Weir contract.[3] In affirming Judge Carchman's opinion for this court in Azurak, the Supreme Court added: "[I]n order to allay even the slightest doubt on the issue of what is required to bring a negligent indemnitee within an indemnification agreement, we reiterate that the agreement must specifically reference the negligence or fault of the indemnitee." 175 N.J. at 112-13, 814 A.2d 600. Clearly the Azurak provision did not, and indemnification was denied for the mall's own negligence. Id. at 111-12, 814 A.2d 600.
In Mantilla, a customer injured in a slip and fall at the Newport Mall brought suit against the mall and its cleaning service. The jury found defendants as well as plaintiff negligent, and apportioned negligence forty percent to the mall, fifty percent to the cleaning company, and ten percent to plaintiff. The mall sought contractual indemnification against the cleaning company, both for its share of the judgment and for its litigation expenses. The indemnification agreement in issue, like the agreement in Azurak, did not include either of the two critical phrases that appear in Article 11 of the Raimondo-Weir contract: "to the extent" and "regardless of."[4] This court had determined that the *78 contract in Mantilla did not require the cleaning company to indemnify the mall for the mall's own negligence, but relied on principles of insurance law to determine that the cleaning company owed the mall indemnification for the costs of its defense. 167 N.J. at 265, 770 A.2d 1144. The Court granted certification on the cleaning service's petition for certification, but denied certification on the mall's cross-petition. Id. at 266, 770 A.2d 1144. Thus the only aspect of the indemnification dispute before the Court in Mantilla was the award of defense costs. The Court rejected the application of insurance law  whereby the allegations of a complaint are to be measured against the policy coverage to determine the obligation to defend  to the interpretation of indemnification provisions. Id. at 274-75, 770 A.2d 1144. Noting that the language of the indemnification contract controls, the Court held: "[A]bsent explicit contractual language to the contrary, an indemnitee who has defended against allegations of its own independent fault may not recover the costs of its defense from an indemnitor." Id. at 275, 770 A.2d 1144. Because the contract "failed to express [such an undertaking] in unequivocal terms," indemnification for legal fees was denied. Ibid.
The question before us is whether the language of the indemnification provision in the Raimondo-Weir contract meets the Ramos-Mantilla-Azurak standard, that is, whether it "express[es] in unequivocal terms" the intention for Weir to indemnify Raimondo for its own negligence.
Prior to the decisions in either Azurak or Mantilla, this court came to different conclusions respecting indemnification provisions that included the "regardless of" language we see in Article 11. Compare Leitao v. Damon G. Douglas Co., 301 N.J.Super. 187, 693 A.2d 1209 (App.Div.), certif. denied, 151 N.J. 466, 700 A.2d 879 (1997), with Mautz v. J.P. Patti Co., 298 N.J.Super. 13, 688 A.2d 1088 (App.Div.), certif. denied, 151 N.J. 472, 700 A.2d 883 (1997). In Leitao, which the Law Division judge relied upon in this case, this court found that the sub-contractor was liable to indemnify the general contractor for the general's own negligence, despite the fact that the sub-contractor was not negligent; the only other negligent party was the plaintiff.[5]Leitao, supra, 301 N.J.Super. at 197-98, 693 A.2d 1209. The contract in Leitao did not include the "to the extent" phrase found in the Mautz contract and in Article 11 of the Raimondo-Weir contract. Id. at 191, 693 A.2d 1209. In Mautz, this court interpreted a combination of the "to the extent" and "regardless of" phrases as analogous to a comparative negligence provision, and denied indemnification to the general contractor for its own negligence. Mautz, supra, 298 N.J.Super. at 21, 688 A.2d 1088.
In a written statement of reasons, the trial judge here explained his conclusion that Article 11 met the required level of *79 clarity set forth in Azurak and Mantilla and compared Mautz with Leitao:
The problem with the Mautz construction, as applied to this case, is that pursuant to the Joint Tortfeasors Contribution Act (hereinafter "the Act"), each party is already responsible for damages sustained "to the extent of" the tortfeasor's negligence. The purpose of the Act is to establish the right of joint tortfeasors to seek allocation among themselves of the burden of their fault. N.J.S.A. 2A:53A-1. Mantilla and Azurak specifically require the parties to include clear and unequivocal language referencing the fault of the indemnitee. Applying Mautz to the facts of this case would essentially render meaningless the indemnification provisions of the agreements.
We do not agree. Nor do we agree with the judge's reliance on Leitao:
This court finds the Leitao court's interpretation of the language more persuasive. This court finds that by including the language "regardless of whether it is caused in part by a party indemnified hereunder" [in Article 11] the parties to the contract clearly and unambiguously intended to provide indemnification for Raimondo's own negligence. The agreement specifically references the negligence or fault of the indemnitee and therefore the contract satisfies the bright line rule established by the Supreme Court. In light of the recent Supreme Court decisions, it does not make sense to follow Mautz in holding that "to the extent" modifies the unambiguous language intended to require indemnification. "To the extent" simply requires that there be at least some liability on the part of the sub-contractor, or anyone directly employed by him, regardless of whether that liability may also be caused in part by an indemnified party. The Leitao court noted that there is no inherent public policy against allowing one to be indemnified for their own negligence. Parties to a construction contract are free to allocate risk and responsibility for injuries related to the construction. The parties themselves are in the best position to determine who should bear the responsibility. . . . As a result, the only reading of th[e] [Article 11] clause that makes sense is that the parties intended to require Weir to indemnify Raimondo for Raimondo's own negligence, absent a finding that Raimondo is 100% at fault.
In his written statement of reasons, the trial judge interpreted and relied on Article 11; he did not refer at all to Rider D.[6]
It is therefore incomprehensible to us that in its brief on appeal, Weir fails even to mention Article 11, but instead argues entirely based on the Rider D indemnification provision. Moreover, Weir's appendix, which purports to include its sub-contract with Raimondo, omits the very page of the sub-contract on which Article 11 appears. In its responding brief, Raimondo points to the glaring omission, and includes the complete contract in its appendix. Weir's reply brief mentions its previous omission only tangentially, arguing that paragraph 5 of Rider D "supersedes" Article 11. We shall return to the question of the relationship between those provisions.
The "regardless of" language of Article 11 clearly states that Raimondo's negligence does not bar its indemnification *80 claim; but the phrase does not distinguish between allowing indemnification for the negligence of others and allowing indemnification for Raimondo's own negligence. As Weir's attorney argued before the Law Division, the "regardless of" language merely means "it won't void the indemnity that does exist. It doesn't create an indemnity that does not exist." Ordinarily, a claim for indemnification requires the claimant to be free of fault. Ramos, supra, 103 N.J. at 190, 510 A.2d 1152 (citing Cartel Capital Corp. v. Fireco of N.J., 81 N.J. 548, 566, 410 A.2d 674 (1980)). Thus the "regardless of" language in Article 11 can be read simply to eliminate that common law condition from the parties' indemnification agreement.
In the absence of the "to the extent" phrase in Article 11, the "regardless of" phrase could be interpreted to require Weir to indemnify Raimondo for its own negligence even if Weir was not at fault at all, as long as Raimondo was not the "sole" cause of damages. See N.J.S.A. 2A:40A-1. The "to the extent" phrase in Article 11 is itself subject to differing interpretations. "To the extent" can be read to mean "if"; that is, Weir is required to indemnify Raimondo only "if" Weir is also found negligent. Under that reading, "to the extent" is not inconsistent with complete indemnification of Raimondo, even for its own negligence, as long as Weir is also negligent "to [some] extent." But the phrase also can be read to require Weir to indemnify Raimondo only "to the extent" of Weir's (or its sub-contractors') share of fault. Neither the "regardless of" phrase nor the "to the extent" phrase answers the question whether such indemnification would include Raimondo's own share of fault. Article 11 thus does not satisfy the required "unequivocal" expression of intention to obligate Weir to fully indemnify Raimondo for damages resulting from its own negligence.
We also cannot ignore the fact that Article 11 is not the only provision of their sub-contract that addressed Weir's obligation to indemnify Raimondo. Rider D is part of the contract, and it includes a very different indemnification provision, lacking either of the critical phrases that appear in Article 11. Paragraph 5 of Rider D simply says, in its material terms, that Weir "shall indemnify" Raimondo for "all claims . . . including . . . litigation expenses [and] counsel fees . . . arising out of injury . . . caused in whole or in part by" Weir or any of its sub-contractors. The inclusion of these two very different indemnification provisions in the same contract  Article 11 and Rider D  creates additional ambiguity. Thus the terms of the contract taken as a whole cannot meet the Ramos-Mantilla-Azurak standard; they do not "express in unequivocal terms" the intention for Weir to indemnify Raimondo for its own negligence. See Meder v. Resorts Int'l. Hotel, Inc., 240 N.J.Super. 470, 479-80, 573 A.2d 922 (App.Div.1989), certif. denied, 121 N.J. 608, 583 A.2d 310 (1990). There, with three different provisions respecting indemnification, the court stated:
We thus conclude that the contractual provisions do not unequivocally express an intention that Claremont will indemnify Resorts for its own negligence. If anything, the three indemnity provisions together suggest the contrary intent; that reading is supported by the principle that ambiguities in an indemnification agreement are to be strictly construed against the indemnitee. . . . Claremont was accordingly entitled to dismissal of the third-party complaint.
[Id. at 480, 573 A.2d 922 (citations omitted).]
As Judge Carchman pointed out in Azurak, it would have placed no undue burden on the parties to have drafted a clear, *81 unambiguous indemnification provision. Azurak, supra, 347 N.J.Super. at 523, 790 A.2d 956. The parties could have spelled out their intention as to which party would bear liability under various circumstances  in particular, whether Weir would bear Raimondo's entire liability, irrespective of whether Raimondo's obligation to a third party arose in part from its own negligence.
Under prevailing law, an ambiguous contractual indemnification provision must be construed against the indemnitee. Ramos, supra, 103 N.J. at 191, 510 A.2d 1152; Meder, supra, 240 N.J.Super. at 480, 573 A.2d 922. Moreover, it is undisputed that this form contract, including Rider D thereto, was drafted by Raimondo, and an ambiguous contract is to be construed against the drafter. E.g., In re Estate of Miller, 90 N.J. 210, 221, 447 A.2d 549 (1982); City of Orange v. Empire Mortgage Servs., Inc., 341 N.J.Super. 216, 227, 775 A.2d 174 (App.Div.2001). Thus, despite Weir's unfortunately incomplete presentation of the issue on appeal, we are compelled to reverse the orders requiring Weir to indemnify Raimondo for the entire settlement with plaintiff, as well as attorneys' fees and costs.

II
We now address Liberty's cross-appeal from the order determining that the CGL policy it issued to Raimondo is primary. Liberty's policy included an "other insurance" endorsement as follows: "This insurance is excess over . . . [a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured. . . ." (Emphasis added.) In accordance with the terms of Paragraph 2 of Rider D, Weir obtained a CGL policy issued by Travelers, which named Raimondo as an additional insured. That policy provided $1 million liability coverage for "each occurrence." The Travelers CGL policy provided: "With respect to the insurance afforded to Additional Insureds . . . [t]his insurance is excess over any valid and collectible insurance unless you [Weir] have agreed in a written contract for this insurance to apply on a primary or contributory basis." (Emphasis added.) As required by Paragraph 4 of Rider D, Weir obtained an umbrella policy from intervenor Chubb Insurance Company of New Jersey, which also named Raimondo as an additional insured and provided $5 million coverage per occurrence.
Early in this litigation, Liberty and Travelers brought cross-motions for summary judgment seeking a determination of coverage. Liberty argued that the Travelers policy constituted "other primary insurance available" to Raimondo, and that Liberty's own policy by its terms became "excess" to the Travelers coverage. Travelers, on the other hand, has maintained that while it provided primary coverage to Weir, its coverage for Raimondo, as an additional insured, was "excess" by its express terms unless it was Raimondo's only coverage for the incident.
In 2001, the motion judge (not the trial judge in 2004) concluded that Liberty's policy was primary, Travelers' coverage was excess only, and Liberty had the obligation to defend Raimondo.[7] The order granting Travelers' motion was entered on May 10, 2001; Liberty's out-of-time motion for reconsideration was denied on December 17, 2001.
*82 Liberty argues on appeal that the Law Division order requiring Weir to fully indemnify Raimondo should be affirmed, in which case the insurance coverage dispute would be moot. Liberty argues in the alternative that if Raimondo is not entitled to indemnification for its own fault, then even if the Liberty policy is "primary," the Travelers policy is also primary, making the two policies "mutually repugnant." See Cosmopolitan Mut. Ins. Co. v. Cont'l. Cas. Co., 28 N.J. 554, 562, 147 A.2d 529 (1959). In that case, Liberty argues that coverage for Raimondo's liability should be shared between them.
We are satisfied, as was the motion judge, that the Travelers CGL policy is excess as to Raimondo, its additional insured. Contrary to Liberty's unsubstantiated contention, the express condition required by the Travelers policy endorsement in order to modify its coverage for Raimondo (from excess to primary) has not been met. Weir's "written contract" with Raimondo, promising a CGL policy that would name Raimondo as an "additional insured," did not refer to or promise "primary" coverage under such policy. Liberty's CGL policy therefore remains primary as to its own insured. Our decision does not, of course, affect Travelers' obligation under the excess (umbrella) policy that also names Raimondo as an additional insured.

III
We affirm the order declaring that the Liberty CGL policy is primary as to Raimondo. We reverse the judgment requiring Weir to indemnify Raimondo for the full amount of the settlement and for its litigation costs and counsel fees. Weir's obligation to indemnify Raimondo is limited to eighty-five percent of the settlement. We remand for entry of a corrected judgment consistent herewith.
Affirmed in part, reversed in part, and remanded.
NOTES
[1] Because Carol Englert's claim was solely derivative, we refer to Charles Englert as "plaintiff" in this opinion.
[2] Under the several sub-contracts, Weir was to be liable to Raimondo for East Rutherford's share of responsibility.
[3] The Azurak indemnification provision, as noted by this court, was as follows:

Contractor shall indemnify, defend and hold harmless each Indemnitee from and against any claim (including any claim brought by employees of Contractor), liability, damage or expense (including attorney's fees) that such Indemnitee may incur relating to, arising out of or existing by reason of (i) Contractor's performance of this Agreement or the conditions created thereby (including the use, misuse or failure of any equipment used by Contractor or its sub-contractors, servants or employees) or (ii) Contractor's breach of this Agreement or the inadequate or improper performance of this Agreement by Contractor or its sub-contractors, servants or employees.
[Id. at 522, 814 A.2d 600. (Emphasis and bracketed material omitted).]
[4] The indemnification provision in Mantilla, in pertinent part, was as follows:

Contractor shall be liable for any injury caused to the Shopping Center or any persons or property thereon by him or any of his employees or sub-contractors in the performance of the work required hereunder. Contractor shall indemnify and hold Owner harmless from any loss, cost, damage, liability or other expense whatsoever that Owner may suffer or incur as the result of a failure of materials and workmanship to be as warranted.
[Mantilla, supra, 167 N.J. at 266, 770 A.2d 1144.]
[5] The court held that because plaintiff was also negligent, the general contractor was not the "sole" negligent party and its indemnification claim was not barred by N.J.S.A. 2A:40A-1. Leitao, supra, 301 N.J.Super. at 197, 693 A.2d 1209.
[6] The judge also noted the indemnification provision of the prime contract between Raimondo and Home Depot, which included the "regardless of" phrase. That provision of the prime contract between Raimondo and Home Depot is irrelevant to the issue before us, contrary to Raimondo's contention.
[7] It was on the basis of that ruling that Liberty advanced to plaintiff the first $1 million of the $2.35 million settlement, without prejudice to its right to appeal the coverage ruling.