57 A.3d 1129

JODY A. SAYLES, ADMINISTRATRIX OF THE ESTATE OF NICH-
OLAS SAYLES, DECEASED, PLAINTIFF, v. G & G HOTELS,
INC., DEFENDANT/THIRD–PARTY PLAINTIFF–APPEL-
LANT/CROSS–RESPONDENT, AND HOWARD JOHNSON IN-
TERNATIONAL, INC., DEFENDANT/THIRD–PARTY PLAIN-
TIFF–RESPONDENT/CROSS–APPELLANT, v. DONNA AND
DENNIS O'NEILL, AS GUARDIANS FOR DANIEL O'NEILL,
THIRD–PARTY DEFENDANTS.

DONNA AND DENNIS O'NEILL, AS GUARDIANS FOR DANIEL
O'NEILL, PLAINTIFFS, v. G & G HOTELS, INC., DEFEN-
DANT/THIRD–PARTY PLAINTIFF–APPELLANT/CROSS–RE-
SPONDENT, AND HOWARD JOHNSON INTERNATIONAL,
INC., DEFENDANT/THIRD–PARTY PLAINTIFF–RESPON-
DENT/CROSS–APPELLANT, v. JODY A. SAYLES, ADMINIS-
TRATRIX OF THE ESTATE OF NICHOLAS SAYLES, DE-
CEASED, THIRD–PARTY DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued November 7, 2012—Decided January 16, 2013.

Before Judges FISHER, ALVAREZ and WAUGH.

*Robert G. Devine* argued the cause for appellant/cross-respondent (*White and Williams,* attorneys; *Mr. Devine,* of counsel and on the brief; *Victor J. Zarrilli,* on the brief).

*C. Brian Kornbrek* argued the cause for respondent/cross-appellant (*Greenbaum, Rowe, Smith & Davis, LLP,* attorneys; *Mr. Kornbrek,* of counsel and on the brief; *Thomas K. Murphy III,* on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In this appeal, we consider a dispute between defendant G & G Hotels, Inc. (G & G), and defendant Howard Johnson International, Inc. (HJI), triggered when Daniel O'Neill and Nicholas Sayles fell through a third-floor window of G & G's Atlantic City hotel on September 16, 2006. That fall, which killed Sayles and seriously injured O'Neill, generated these consolidated suits and, ultimately, the summary judgment in favor of HJI on its contractual indemnification claim and other related rulings, which we now examine.

In 1995, G & G and HJI entered into a license agreement, which permitted G & G's use of the Howard Johnson brand name; G & G remained an independent owner and operator of the hotel. The license agreement also contained an indemnity provision, which governs much of what we decide, and imposed an obligation on G & G to provide insurance coverage for HJI.

Prior to trial, HJI sought summary judgment against G & G on the basis of the indemnification provision. Finding the scrivener's efforts to be unartful—noting the provision "is not a model of clarity" because it contained "too many, far too many disjunctives, conjunctives and commas, and an insufficient amount of periods"— the trial judge nevertheless granted HJI's motion, finding enforcement of the provision here was consistent with the principles outlined in *Azurak v. Corporate Property Investors,* 175 *N.J.* 110, 111–12, 814 *A.*2d 600 (2003) and earlier cases.

A few months later, when the personal injury case came before the court for trial, a jury was selected but the parties soon thereafter announced a settlement of plaintiffs' claims. G & G, however, argued it was entitled to pursue before the jury its indemnification and contribution claims against HJI. The judge summarily dismissed those claims, leaving for disposition HJI's cross-claim against G & G for breach of the licensing agreement and attorneys' fees. By subsequent motion, the judge dismissed HJI's breach of contract claim and ordered G & G to pay attorneys' fees to HJI in the amount of $13,402.

G & G appeals, arguing that the trial judge erred: in granting HJI's summary judgment motion because, in G & G's view, the indemnification provision does not, as a matter of law, unequivocally express the parties' intent that G & G indemnify HJI for claims based on HJI's negligence; in granting HJI's summary judgment motion, claiming the alleged lack of clarity in the indemnification provision required fact finding; and in summarily dismissing G & G's contribution and common law indemnification claims.

HJI not only refutes G & G's arguments but also argues there were three additional reasons, not adopted by the trial judge, for affirming the order dismissing G & G's cross-claims, namely: G & G never filed cross-claims against HJI; G & G released all claims it had against HJI when terminating the license agreement in August 2007; and G & G provided factual statements in its discovery responses that belie its claim that the accident was caused by HJI's negligence. In addition, HJI cross-appeals, arguing the trial judge erred in denying HJI's summary judgment motion because: as a franchisor, HJI owed plaintiffs no duty and there was no evidence of HJI's direct negligence; plaintiffs' accident was not reasonably foreseeable; and HJI was entitled to relief based on G & G's failure to obtain the contractually-required levels of insurance coverage.

We reject G & G's arguments in support of its appeal because the indemnification provision sufficiently expresses the parties'

intent that HJI would be entitled to indemnification from G & G for claims arising from HJI's negligence. In light of that disposition, we need not decide all the issues raised by HJI in opposition to the appeal and in support of its own cross-appeal, except that we conclude HJI is entitled to its fees and expenses in these appellate proceedings and adjudication of its claims for other unreimbursed fees and expenses incurred in the trial court both before and after plaintiffs' claims were settled.

## I

■ At the heart of G & G's appeal is its contention that the indemnification provision was not unequivocal with regard to its application to claims arising from HJI's negligence. We disagree.

■ We start with the premise that "[i]ndemnity contracts are interpreted in accordance with the rules governing the construction of contracts generally" and that "[w]hen the meaning of the clause is ambiguous ... the clause should be strictly constructed against the indemnitee." *Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*, 103 *N.J.* 177, 191, 510 *A.2d* 1152 (1986); *see also Azurak, supra*, 175 *N.J.* at 111–12, 814 *A.2d* 600; *Mantilla v. NC Mall Assocs.*, 167 *N.J.* 262, 272, 770 *A.2d* 1144 (2001). The provision in question required G & G to:

> *indemnify, defend and hold [HJI] harmless*, to the fullest extent permitted by law, *from and against all Losses and Expenses*, incurred by [HJI] in connection with any ... claim ... *relating to or arising out of any transaction, occurrence or service at or in conjunction with the operation of the Facility*, any breach or violation of any contract or any law, regulation or ruling by, or any act, error or omission (active or passive) of, [G & G], any party associated or affiliated with [G & G], or any of their respective owners, officers, directors, employees, agents or contractors, *including when the active or passive negligence of [HJI] is alleged or proven.*
>
> [ (Emphasis added) 1]

_____

1 The provision contains the following additional language, which immediately follows the above quoted portion, that is not applicable here except to the extent that it further amplifies the parties' intent that HJI broadly indemnified:

G & G claims this provision is equivocal and ambiguous and should not have been applied here, because it allows for at least two plausible interpretations.

The first interpretation, which was how HJI and the trial court read the document, viewed the ending phrase of the critical portion—"including when the active or passive negligence of [HJI] is alleged or proven" (hereafter "the ending phrase")—as relating to *all* the instances in which expenses and losses might be incurred as described throughout the provision.

The second, which is what G & G urged in the trial court and urges now, viewed the ending phrase as relating only to the portion that immediately precedes it, namely, "any act, error or omission (active or passive) of [G & G], or any of their respective owners, officers, directors, employees, agents or contractors." In other words, G & G interprets the provision as consisting of three internal subsections of which the ending phrase relates only to the third, as if the provisions of the subparts were enumerated in the following way:

> [G & G] will indemnify, defend and hold [HJI] harmless, to the fullest extent permitted by law, from and against all Losses and Expenses, incurred by [HJI] in connection with any ... claim ... relating to or arising out of[:] [ (1) ] any transaction, occurrence or service at or in conjunction with the operation of the Facility, [ (2) ] any breach or violation of any contract or any law, regulation or ruling by, or [ (3) ] any act, error or omission (active or passive) of, [G & G], any party associated or affiliated with [G & G], or any of their respective owners, officers, directors, employees, agents or contractors, including when the active or passive negligence of [HJI] is alleged or proven.

For the reasons that follow, we find G & G's interpretation to be contrived and inconsistent with the inner sense of the document.

We initially reject G & G's argument that the Supreme Court's decisions in *Ramos, Mantilla* and *Azurak* create a brightline rule

---

[G & G] shall have no obligation to indemnify [HJI] for property damage or personal injury if [HJI] is proven to have engaged in willful misconduct or intentionally caused such property damage or bodily injury. Such exclusion from the obligation to indemnify shall not, however, apply if the property damage or bodily injury resulted from the use of reasonable force by [HJI] to protect persons or property.

that prohibits enforcement of an indemnification provision in this situation, where HJI has been alleged to have been negligent. In none of those cases, however, did the indemnification provision mention whether indemnification would be required when the indemnitee was alleged or shown to be negligent.

For example, in *Ramos,* the closest the provision came to suggesting the parties' intent to require indemnification for the indemnitee's negligence was the statement that the indemnitor would indemnify for claims arising from the indemnitor's "use, operation or possession of the equipment" furnished by the indemnitee. 103 *N.J.* at 182, 510 *A.*2d 1152. The Court held that the loss in question did not arise from the use of the indemnitee's equipment, but from some other negligent act of the indemnitee and concluded that contractual indemnification was, therefore, not due. *Id.* at 192–93, 510 *A.*2d 1152. The multiple indemnification provisions considered in *Mantilla* were not unlike the provision considered in *Ramos;* the scope of indemnification regarding the acts or omissions of the indemnitee extended only to losses resulting from "a failure of materials and workmanship" warranted by the indemnitee. *Mantilla, supra,* 167 *N.J.* at 268, 770 *A.*2d 1144. In that instance, the Court again held that the parties' failure to "express in unequivocal terms" that the indemnitee would be indemnified for losses resulting from its negligence barred the indemnification claim. *Id.* at 273, 770 *A.*2d 1144. And in *Azurak,* the Court, in a brief opinion, reaffirmed this approach with regard to a contractual provision, which, like those considered in *Ramos* and *Mantilla,* made no specific mention of the indemnitee's own negligence but only to losses arising from the indemnitor's use of the indemnitee's equipment or personnel. *Azurak, supra,* 175 *N.J.* at 111, 814 *A.*2d 600.

G & G's claim of a broader reach of *Ramos, Mantilla* and *Azurak* than expressed in those cases is actually based on our examination of similar issues relating to yet another—and different—indemnification provision in *Englert v. The Home Depot,* 389 *N.J.Super.* 44, 911 *A.*2d 72 (App.Div.2006), *certif. denied,* 192 *N.J.*

71, 926 *A.*2d 855 (2007). There, we examined a provision that imposed a duty to indemnify for claims or losses *"to the extent caused "* by the indemnitor's acts or omissions described *"regardless of* whether it is caused in part by a party indemnified hereunder." *Id.* at 48, 911 *A.*2d 72. After considering *Ramos, Mantilla* and *Azurak,* as well as other cases, we concluded in *Englert* that this provision was not unequivocal because it did "not distinguish between allowing indemnification for the negligence of others and allowing indemnification for [the indemnitee's] own negligence." 389 *N.J.Super.* at 56, 911 *A.*2d 72.

Unlike these earlier cases, the indemnification provision in question here expressly "includ[es]" within the losses and expenses whose occurrence give rise to G & G's obligation to indemnify HJI those where it is "alleged or proven" as having been caused by "the active or passive negligence of [HJI]." G & G's argument that the provision is ambiguous in this regard is, unlike the cases cited, not based on the absence of a reference to the indemnitee's own negligence, but on the contention that the phrase's placement in the clause suggested a limited application.

Indeed, G & G's crabbed reading of the provision is faulty because the ending phrase, which relates to the nature of the allegations or facts proven *of HJI,* is forced to illogically modify only the preceding third subsection, which is a description of the conduct *of G & G* and its affiliates. That is, to borrow an overused cliché, G & G's proposed reading mixes apples and oranges, by taking a description of an area of conduct engaged in by G & G and its affiliates and "includes" within it allegations of HJI's active or passive negligence.

The pieces of this indemnification provision simply do not fit in the manner urged by G & G. This can be demonstrated by examining the provision after removal of its many alternate nouns, verbs and related terms unnecessary to the analysis, i.e.:

[G & G] will indemnify ... [HJI] ... from ... all Losses ... incurred by [HJI] in connection with [1] any ... suit ... relating to ... any ... occurrence ... in conjunction with the operation of the [hotel], [2] any breach [of contract] or violation of ... any law ..., or [3] any act, error or omission (active or passive) of

[G & G] . . . or [its affiliates and associates], including when the active or passive negligence of [HJI] is alleged or proven.

Restated in this way, G & G's interpretation lacks harmony because the ending phrase does not relate to the third subpart; common sense suggests the ending phrase modifies all three internal subparts.

In engaging in the interpretation of written documents, Judge Learned Hand observed in *Cabell v. Markham*, 148 *F*.2d 737, 739 (2d Cir.), *aff'd*, 326 *U.S.* 404, 66 *S.Ct.* 193, 90 *L.Ed.* 165 (1945), that "a mature and developed jurisprudence" does not "make a fortress out of the dictionary"; we would add that our jurisprudence does not make a fortress out of *The Elements of Style*.[2] In rejecting G & G's arguments, we do not quarrel with the proposition that this indemnification provision could have been better written. But, simply because there is a better mode of expression, does not render equivocal or ambiguous less artful expressions. In the final analysis, a court must look for the parties' true intent, and there is no doubt the indemnification provision was intended to provide coverage for HJI for its own negligent acts or omissions that relate to all the types of accidents and claims described in the entire provision, not just that group of claims fitting the third internal subpart.

Even a legal principle that requires a construction of an ambiguous expression in favor of one party does not "require magnified emphasis upon a single ambiguous word in order to give it a meaning contradictory to the fair import of the whole remaining language." *United States v. Brown*, 333 *U.S.* 18, 25–26, 68 *S.Ct.* 376, 380, 92 *L.Ed.* 442, 448 (1948). The general principle that ambiguous contractual indemnification agreements should be construed against the indemnitee does not require a search for ambiguity in every complex provision. G & G's interpretation would leave to the absurd consequence of "including" HJI's acts or omissions within a description of G & G's acts or omissions. We

---

2 William Strunk, Jr. and E.B. White, *The Elements of Style* (3rd ed.1979).

decline the invitation to accept G & G's interpretation in order to reverse the trial judge's common sense interpretation. Although complex, the indemnification provision is not ambiguous.

Moreover, even G & G's interpretation—that the ending phrase modifies only the third internal subpart—requires indemnification. G & G settled with plaintiffs and cannot, therefore, claim that it has been held responsible for a claim that was based on allegations or proof that plaintiffs' claims were based on HJI's sole negligence. We recognize that G & G was not a settling defendant at the time of the entry of summary judgment in favor of HJI on the contractual indemnification issue, this ultimate result demonstrates HJI's entitlement to indemnification. Accordingly, the third internal subpart was triggered here and requires contractual indemnification even when interpreting the provision as G & G has urged.

For these reasons, we do not reach HJI's alternative arguments that it was entitled to contractual indemnification.

## II

In light of our disposition of the appeal, we need not discuss every issue raised by HJI in its cross-appeal. For example, HJI argues that the trial judge erred in denying its summary judgment motion on the breach of contract claim, asserting that G & G failed to provide the stipulated level of insurance coverage. Because there is no existing license agreement between the parties and no current or future duty to provide insurance coverage for HJI, G & G's alleged failure to maintain the proper level of coverage has a consequence only for this case and not for future events. And because we have held that HJI is entitled to be fully indemnified, HJI is entitled to be reimbursed for its losses and expenses notwithstanding G & G's alleged failure to provide insurance coverage to the extent required by the license agreement. We remand for the trial judge's consideration of HJI's proofs as to its losses and expenses and for an award of those damages in HJI's favor. The trial judge's post-settlement deter-

mination that HJI's claim was moot was erroneous, and HJI is entitled to be compensated for all the fees and expenses it has and continues to incur in this litigation.

The losses and expenses for which HJI should be reimbursed also include its attorneys' fees, costs and expenses incurred during these appellate proceedings. HJI may file a motion in this court for such an award. The trial judge shall thereafter incorporate our award in this regard in the trial court judgment ultimately entered in HJI's favor.

### III

Affirmed in part; remanded in part. HJI is permitted to file a motion in this court for fees and expenses within fourteen days of today's date. After our ruling on the motion, the trial judge shall engage in such proceedings as necessary to fully and fairly determine those other losses and expenses to which HJI is entitled due to G & G's obligation to fully indemnify HJI pursuant to the license agreement.

We do not retain jurisdiction except to the extent that we consider and decide HJI's anticipated motion for fees and expenses.