**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0886-17T4

TEODORO LOPEZ and
CARMEN LOPEZ,

      Plaintiffs,

v.

PALIN ENTERPRISES, ASSOCIATED
ELEVATOR COMPANIES, INC., and
OTIS ELEVATOR CORPORATION,

      Defendants,

and

PALIN ENTERPRISES,

      Third-Party Plaintiff-Respondent,

v.

AGILE TRADE-SHOW
FURNISHINGS, INC., and LIBERTY
MUTUAL INSURANCE COMPANY,

      Third-Party Defendants-Appellants.

_____

Argued November 26, 2018 – Decided December 5, 2018

Before Judges Fasciale and Gooden Brown.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-4903-12.

Walter F. Kawalec, III, argued the cause for appellants (Marshall Dennehey Warner Coleman & Goggin, attorneys; Walter F. Kawalec, III and Eric R. Brown, on the briefs).

Marc L. Dembling argued the cause for respondent (Methfessel & Werbel, PC, attorneys; Marc L. Dembling and Olivia R. Licata, of counsel and on the brief).

PER CURIAM

This is an insurance-coverage dispute among Palin Enterprises (Palin), Agile Trade-Show Furnishings, Inc. (Agile), and Wausau Insurance companies (Wausau).[1] Palin owned a commercial building and leased part of it to Agile, who employed plaintiff Teodoro Lopez (Lopez). Lopez injured himself using a freight elevator inside the leased premises. Palin tendered the defense to Wausau, argued it was entitled to primary insurance coverage as an additional insured, and sought contractual indemnification from Agile. Agile appeals from an order requiring it to indemnify Palin for Palin's negligence. Wausau appeals

---

[1] Palin improperly identified Wausau in its third-party complaint as Liberty Mutual Insurance Company.

A-0886-17T4

from an order compelling it to provide primary insurance to Palin. Palin and Wausau also appeal from a subsequent order denying reconsideration. We reverse.

On appeal, Agile argues that it had no obligation under the lease to indemnify Palin for Palin's negligence, which Agile asserts the lease specifically precluded. Agile contends that it complied with the lease by obtaining insurance coverage for Palin. Wausau maintains that the "other insurance" policy language in the policies requires that Wausau provide excess insurance over the primary insurance policy issued by Palin's insurer, Greater New York Mutual Insurance Company (the Greater New York Policy).

The facts are undisputed. The appeal requires us to interpret the text of the lease and insurance policies. We owe no special deference to the judge's conclusions on issues of law. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Instead, we apply a de novo standard to review questions of law. In re Snellbaker, 414 N.J. Super. 26, 37-38 (App. Div. 2010).

A-0886-17T4

I.

We begin by addressing Agile's limited contractual obligation under the lease. The lease required Agile to indemnify Palin, but not for Palin's own negligence. Section 12.01 of the lease provides in part that

> [Agile] agrees to indemnify and save [Palin] . . . harmless from and against any and all claims arising during the terms of this Lease for damages or injuries to goods, wares, merchandise and property and/or for any personal injury or loss of life in, upon or about the Demised Premises, the appurtenances thereof, and any sidewalks adjoining the Demised Premises, except such claims as may be the result of the negligence of [Palin], its agents, employees or contractors, or the failure of [Palin] to perform any of its obligations hereunder.

> [Emphasis added.]

We interpret indemnity contracts according to general contract principles. Ramos v. Browning Ferris Indus., Inc., 103 N.J. 177, 191 (1986). "[A] contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms." Ibid. The courts have consistently reaffirmed this "bright-line rule" requiring explicit language to enforce an indemnity provision that purports to include an indemnitee's own negligence. Azurak v. Corporate Prop. Inv'rs., 175 N.J. 110, 112 (2003); see also Estate of D'Avila v. Hugo Neu Schnitzer E., 442 N.J. Super. 80, 114-15 (App. Div. 2015). Here, the lease does not express the parties'

A-0886-17T4

intention that Agile indemnify Palin for Palin's negligence "in unequivocal terms." Ramos, 103 N.J. at 191. Rather, the lease specifically excluded any such obligation.

II.

Agile had an obligation under the lease to obtain additional insurance for Palin, beyond the coverage that Palin procured in its Greater New York Policy. Agile required that Wausau name Palin as an additional insured. But the lease did not require Agile to procure primary insurance coverage for Palin. Article XXVI of the rider to the lease provides, in part, that

> [Agile] agrees to provide . . . a comprehensive policy of liability insurance protecting [Palin] . . . against any liability whatsoever, occasioned by any occurrence on or about the Demised Premises or any appurtenances thereto with limits of liability hereunder of not less than the amount of THREE MILLION AND 0/100 ($3,000,000.00) DOLLARS combined single limit coverage on a per occurrence basis and in the amount of FIVE HUNDRED THOUSAND AND 00/100 ($500,000.00) DOLLARS in respect of property damages. Such policy is to be written by good and solvent insurance companies satisfactory to [Palin].
>
> [Emphasis added.]

We enforce an unambiguous contract – like this lease – as written. Schenck v. HJI Assocs., 295 N.J. Super. 445, 450 (App. Div. 1996) (citing U.S. Pipe & Foundry Co. v. Am. Arbitration Ass'n, 67 N.J. Super. 384, 393 (App.

A-0886-17T4

Div. 1961)).  "We do not supply terms to contracts that are plain and unambiguous, nor do we make a better contract for either of the parties than the one which the parties themselves have created."  Barr v. Barr, 418 N.J. Super. 18, 31-32 (App. Div. 2011) (quoting Maglies v. Estate of Guy, 193 N.J. 108, 143 (2007)).  Only if the contract is ambiguous will the court allow extrinsic evidence of the meaning of the terms.  "Where an ambiguity appears in a written agreement, the writing is to be strictly construed against the draftsman."  In re Estate of Miller, 90 N.J. 210, 221 (1982).  Importantly, even the judge recognized that the lease did not specify that Agile procure primary coverage for Palin.  Nevertheless, he erroneously concluded that Agile was contractually required to obtain primary coverage for Palin.

Moreover, the judge mistakenly determined that Agile had a contractual obligation to obtain insurance for Palin "for any and all claims."  The text of the lease, however, states that Agile will provide "a comprehensive policy of liability insurance protecting [Palin] . . . against any liability whatsoever . . . ."  The lease does not require Agile to obtain additional insurance for Palin as to all claims, only as to all liability.  It is well-settled that "claim" and "liability" are not synonyms.  A claim is "[t]he assertion of an existing right," but liability is "[t]he quality, state, or condition of being legally obligated or accountable;

6

legal responsibility to another or to society, enforceable by civil remedy or criminal punishment." Black's Law Dictionary (10th ed. 2014).

## III.

Finally, the language of the insurance policies does not require that Wausau provide primary insurance to Palin. "Where two carriers have responsibility for a claim, the other-insurance clause of each policy must be examined to determine whether there exists language which may govern the contribution each party should make." W9/PHC Real Estate LP v. Farm Family Cas. Ins. Co., 407 N.J. Super. 177, 199 (App. Div. 2009) (citing Universal Underwriters Ins. Co. v. CNA Ins. Co., 308 N.J. Super 415, 417 (App. Div. 1998)). When the two policies each have an other-insurance clause, which states that it is excess to another policy, "the provisions are 'mutually repugnant,' and are disregarded." Ibid. But, "the general rule in New Jersey [is] that where an excess clause and a pro rata clause appear in concurrently effective policies, the pro rata clause is disregarded and full effect is given to the excess clause, making the pro rata clause the primary insurance." Id. at 199-200.

The Wausau policy includes a blanket additional insured provision for the lessors of premises. The provision provides that a lessor of premises leased by the policy holder is an additional insured. It specifies that the coverage provided

7

is excess coverage, unless coverage on another basis is required by written agreement:

> ITEM 11. BLANKET ADDITIONAL INSURED AND WAIVER OF SUBROGATION – MANAGERS OR LESSORS OF PREMISES
>
> A. Section II – Who Is An Insured is amended to include as an insured any manager or lessor of premises leased by you in which the written lease agreement obligates you to procure additional insured coverage . . .
>
>    . . . .
>
> D. Other Insurance
>
> The insurance provided by this endorsement applies only to coverages and limits of insurance required by written agreement, but in no event exceeds either the scope of coverage or the limits of insurance available within this policy.
>
> This insurance shall be excess over any other insurance available to the additional insured whether such insurance is on an excess, contingent or primary basis, unless you are obligated under a written agreement to provide liability insurance for that additional insured on any other basis. In that event, this policy will apply solely on the basis required by such written agreement.

The Greater New York Policy also had a provision titled "Other Insurance Condition," which provided that the policy provided excess coverage over

A-0886-17T4

specific types of other insurance available to Palin. In pertinent part, the

provision states

> This insurance is excess over:
>
> (1) Any of the other insurance, whether primary, excess, contingent or on any other basis:
>
> (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";
>
> (b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;
>
> (c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or
>
> (d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of COVERAGE A (SECTION I).
>
> (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or products or completed operations, for which you have been added as an additional insured by attachment of an endorsement.
>
> (3) Any other primary insurance available to you that covers liability for damages arising out of the premises or operations, or products or completed operations, for which another party has agreed under contract to indemnify you or hold you harmless.

9

All three categories are inapplicable. The first has nothing to do with this case, and the last two pertain to "other primary insurance." As we have already established, Agile had no contractual obligation under the lease to obtain primary insurance for Palin.

Wausau and Agile rely on this court's decision in Englert v. Home Depot, 389 N.J. Super. 44 (App. Div. 2006). Englert involved a dispute between a general contractor and a subcontractor relating to a construction-site accident. Id. at 47. The contract between the two contractors required that the subcontractor name the general contractor as an additional insured. Id. at 58. The general contractor's insurance policy with Liberty Mutual provided an "other-insurance" endorsement which stated, "This insurance is excess over . . . [a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured . . . . " Ibid. (alterations in original). The subcontractor's insurance policy, issued by Travelers, named the general contractor as an additional insured, and provided that, "With respect to the insurance afforded to Additional Insureds . . . [t]his insurance is excess over any valid and collectible insurance unless you [subcontractor] have agreed in a written contract for this

insurance to apply on a primary or contributory basis." Ibid. (alterations in original).

In affirming the motion judge's decision in Englert, we concluded that the coverage under Liberty's policy, issued to the general contractor, was primary and the coverage under the subcontractor's policy was excess. Id. at 59. We reasoned that "the express condition required by the Travelers policy endorsement in order to modify its coverage for [the general contractor] (from excess to primary) has not been met." Ibid. We noted that the subcontractor's "'written contract' with [the general contractor], promising a [commercial general liability] policy that would name [the general contractor] as an 'additional insured,' did not refer to or promise 'primary' coverage under such policy." Ibid.

Similarly, here, the lease agreement required that Agile obtain an insurance policy to protect Palin "against any liability whatsoever." Agile obtained an insurance policy from Wausau, which named Palin as an additional insured. The explicit language of the Wausau policy states that Palin, as an additional insured, is afforded excess coverage, unless a written agreement obligates primary coverage. The lease agreement did not specify that the

insurance provided must be primary. Therefore, the Wausau policy provides excess coverage over Greater New York's primary coverage.

Reversed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0886-17T4