770 A.2d 1144

CARMEN MANTILLA AND PASCUAL MANTILLA, PLAINTIFFS, v. NC MALL ASSOCIATES, INCORRECTLY DESIGNATED AS SIMON AND ASSOCIATES, INC. AND M.S. MANAGEMENT ASSOCIATES (INDIANA), INC., DEFENDANTS–RESPONDENTS, AND PLANNED BUILDING SERVICES INC., DEFENDANT–APPELLANT, AND ABC MAINTENANCE COMPANY (FICTITIOUSLY NAMED); CDE CONSTRUCTION COMPANY (FICTITIOUSLY NAMED); EFG ROOFING COMPANY (FICTITIOUSLY NAMED); HIJ ARCHITECTURAL FIRM (FICTITIOUSLY NAMED); XYZ ENGINEERING FIRM (FICTITIOUSLY NAMED), DEFENDANTS.

Argued January 3, 2001—Decided March 27, 2001.

*Theresa E. Mullen* and *Allan Maitlin* argued the cause for appellant (*Sachs, Maitlin, Fleming, Greene, Wilson & Marotte,* attorneys).

*Stanley P. Fishman* argued the cause for respondents (*Fishman & Callahan,* attorneys; *Lisa Della Pelle,* on the briefs).

The opinion of the Court was delivered by

COLEMAN, J.

This appeal requires us to decide whether Newport Centre Mall Associates and M.S. Management Associates (Newport Mall), the indemnitee under a contract between it and Planned Building Services, Inc. (PBS), may be indemnified for legal expenses incurred in defending itself against a claim based on its own negligence. The Appellate Division found that Newport Mall was entitled to indemnification for its legal expenses. We disagree and reverse. We hold that absent explicit contractual language to the contrary, an indemnitee who has been found to be at least partially at fault may not recover the costs of its defense from an indemnitor.

## I.

The facts of this case stem from a slip and fall at the Newport Mall located in Jersey City, New Jersey. Plaintiff Carmen Mantilla was injured on May 3, 1996, when she slipped and fell on water that had accumulated on the floor of the Newport Mall as a result of a leaking roof. She instituted the present litigation against Newport Mall, the owners and managers of the mall, and PBS, which had been hired by the mall to perform cleaning services. PBS and Newport Mall disputed whether the terms of their contract for janitorial services required PBS to clean up the water that had accumulated due to the leaky roof. At the conclusion of trial, a jury found that Newport Mall, PBS, and plaintiff were all negligent, found that their negligence proximately caused the accident, and awarded plaintiffs $197,000 in dam-

ages. The jury apportioned the negligence as follows: 40% to Newport Mall, 50% to PBS, and 10% to plaintiff. The verdict was molded to reflect plaintiff's negligence and the availability of funds from collateral sources. Post-trial motions for a new trial were denied.

Following the entry of the judgment, Newport Mall moved pursuant to an indemnity agreement, to compel PBS to pay for its litigation expenses and to provide indemnification for its part of the judgment. The trial court ruled that the indemnification contract between PBS and Newport Mall required PBS to provide complete defense costs and indemnification, including that portion of the judgment that was based on Newport Mall's own negligence.

PBS appealed, arguing that there was no evidence that it breached any duty that was a proximate cause of plaintiff's injury; that there was no evidence of constructive notice such as would create liability on its part; that the trial court erred in its jury instruction concerning notice; and that the indemnification clause did not require it to indemnify Newport Mall for its own negligence. The Appellate Division affirmed the judgment against PBS in an unpublished opinion.

On the issue of the scope of the contractual indemnification, the Appellate Division agreed with PBS's contention that, under the contract between it and Newport Mall, PBS's indemnification liability was limited to losses caused by or arising from PBS's negligence, and therefore it should be required to indemnify Newport Mall only with respect to PBS's 50% negligence. In other words, the Appellate Division held that PBS was not required to indemnify Newport Mall for the consequences and losses arising from Newport Mall's own negligence. Relying on principles of insurance law, however, the court determined that PBS was required to indemnify Newport Mall for all of the costs of its defense. The panel found that "Newport Mall was an additional insured under PBS's general liability policy." Thus, the Appellate Division held that, "[w]hen the complaint was filed which stated a

claim constituting a risk insured against, a duty to defend came into being irrespective of the claim's merit."

We granted PBS's petition for certification to determine whether Newport Mall is entitled to indemnification for legal fees incurred in defending itself against a claim of its own negligence. 165 *N.J.* 135, 754 *A.*2d 1211 (2000). We denied Newport Mall's cross-petition for certification in which it sought to obtain contractual indemnification for its own negligence. *Ibid.*

## II.

The contract between PBS and Newport Mall is an amalgam of Newport Mall's printed form of general application and PBS's typed form, which was specifically tailored to this transaction. The contract contains three paragraphs relating to indemnification.

An indemnification clause in the Newport Mall printed portion states in pertinent part:

> 10. **Contractor's Warranty and Liability**.... Contractor shall be liable for any injury caused to the Shopping Center or any persons or property thereon by him or any of his employees or subcontractors in the performance of the work required hereunder. Contractor shall indemnify and hold Owner harmless from. any loss, cost, damage, liability or other expense whatsoever that Owner may suffer or incur as the result of a failure of materials and workmanship to be as warranted.

An insurance clause in the same printed portion states:

> 12. **Risk of Loss; Indemnity; Insurance.** All work performed by Contractor hereunder shall be done and performed solely at Contractor's own risk, and it is understood and agreed by the parties that Contractor is an independent contractor and not an agent or employee of Owner. Contractor shall indemnify and save Owner harmless from any and all loss, cost, expense, damages, claims and liability for bodily injury, death or property damage occurring in and about the Shopping Center as a result of the work performed and materials and equipment installed or furnished by Contractor hereunder. Contractor shall carry and keep in force the following insurance:
>
> > (a) A comprehensive general .. liability policy, including contractual liability coverage with respect to this agreement, bodily injury liability, property damage and completed operations coverage, all in broad form...

In furtherance of that provision, PBS obtained a comprehensive general liability policy from Travelers Insurance Company con-

taining an additional insured endorsement which, in pertinent part, states:

WHO IS AN INSURED (SECTION II) IS AMENDED TO INCLUDE AS AN INSURED ANY PERSON OR ORGANIZATION FOR WHOM YOU HAVE AGREED IN WRITING PRIOR TO INJURY TO PROVIDE INSURANCE BUT ONLY WITH RESPECT TO OPERATIONS PERFORMED BY YOU OR ON YOUR BEHALF, OR PREMISES OWNED OR USED BY YOU.

The third indemnification clause is located in the typed portion of the PBS–Newport Mall contract. In pertinent part, it states:

*ARTICLE 6. INDEMNITY.* PBS shall indemnify and hold Owner, Melvin Simon and Associates, Inc., and M.S. Management Associates Inc., ("indemnitees") harmless from and against any and all claims, liabilities, damages, losses and judgments, including cost and expenses incident thereto, which may be suffered by or accrue against, be charged to or recoverable from indemnities [sic], by reason of injury to or death of any person or by reason of injury to or destruction of property, caused by or arising from the negligence of PBS, its officers, agents or employees, in connection with any matter dealt with in this agreement.

## A.

The issue is whether the contractual provisions reproduced above obligated PBS to indemnify Newport Mall for the legal costs that Newport Mall incurred while defending itself against a claim based on its own negligence. At the outset, we note the contradiction between the Appellate Division's indemnification holdings. On the one hand, the Appellate Division held that "the agreement did not intend to indemnify Newport Mall against the consequences of its own negligence but limited liability indemnification to losses resulting from PBS['s] negligence." On the other hand, the panel found that PBS was obligated to indemnify Newport Mall for one of "the consequences of its own negligence," namely, the cost of a legal defense against allegations of its own independent fault.

■ The Appellate Division's decision is in direct conflict with two other Appellate Division opinions, *Geralnik v. Simon Debartolo Group*,[1] No. A–1032–99T3 (App.Div. October 25, 2000), and

---

[1] We are normally prohibited by *Rule* 1:36–3 from citing to an unpublished opinion. However, an exception is permissible here because Newport Mall and

*Central Motor Parts Corp. v. E.I. duPont deNemours & Co.*, 251 *N.J.Super.* 5, 596 *A.*2d 759 (App.Div.1991). We agree with the positions of the panels in *Geralnik* and *Central Motor*, and therefore rely on the reasoning set forth in those opinions in reaching our decision in this appeal.

The facts in this record are strikingly similar to those in *Geralnik*. In *Geralnik*, the plaintiff injured her back when she slipped on a wet doormat near the entrance to the Newport Mall. *Geralnik, supra*, slip op. at 2. The plaintiff brought suit against Newport Mall and its janitorial services contractor, PBS. *Ibid.* The jury found Newport Mall 71% negligent and PBS 29% negligent, and awarded the plaintiff $385,000. *Ibid.* Interpreting the same PBS–Newport Mall contract that is at issue before us, the trial court granted Newport Mall's motion for indemnification and held PBS responsible for the entire amount of the verdict and for the cost of the defense. *Ibid.*

The Appellate Division reversed, finding that PBS was not obligated to indemnify Newport Mall for losses attributable to Newport Mall's own negligence or for the cost of defending against such negligence. *Id.* at 16. The panel looked to the PBS–Newport Mall contract and determined that the "limited engagement of Article 6 plainly confine[d] PBS's obligation of indemnification to its own acts of negligence." *Id.* at 12–13. Thus, the court considered the language in paragraphs 10 and 12 of the PBS–Newport Mall contract and concluded that "[t]he critical question [was] whether plaintiff's injury was a 'result of a failure of materials and workmanship' warranted by PBS, or a 'result of the work performed and materials and equipment installed or furnished' by PBS." *Id.* at 13.

---

PBS were also defendants in the *Geralnik* lawsuit. *R.* 1:36–3 ("[E]xcept to the extent required by *res judicata*, collateral estoppel, the single controversy doctrine or any other similar principal of law, no unpublished opinion shall be cited by any court"). *See Roberts v. Goldner*, 79 *N.J.* 82, 397 *A.*2d 1090 (1979); *Eherenstorfer v. Division of Pub. Welfare*, 196 *N.J.Super.* 405, 412, 483 *A.*2d 212 (App.Div.1984).

The Appellate Division explained that "[a]lthough indemnification agreements are interpreted in accordance with the rules governing contracts generally, ambiguous clauses should be construed strictly against the indemnitee." *Ibid.* (citations omitted). Further, the panel stated that "[a] contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such intention is expressed in unequivocal terms." *Id.* at 13–14 (citing *George M. Brewster & Son, Inc. v. Catalytic Constr. Co.,* 17 *N.J.* 20, 33, 109 *A.*2d 805 (1954)). The court observed that "[t]his general rule is fortified by *N.J.S.A.* 2A:40A–1, which specifies that an indemnification agreement in a 'maintenance' or 'construction' contract purporting to hold harmless the indemnitee for losses or damages resulting from its 'sole negligence' is a violation of public policy." *Id.* at 14 (citing *Carvalho v. Toll Bros. & Developers,* 143 *N.J.* 565, 578, 675 *A.*2d 209 (1996)). Although the court recognized that *N.J.S.A.* 2A:40A–1 was not applicable to *Geralnik* because both PBS and Newport Mall were found to be at fault, the panel stated that the statute emphasizes "that there is a presumption against indemnifying an indemnitee for its own negligence that can be rebutted only by plain language clearly expressing a contrary intent." *Ibid.* (citing *Pingaro v. Rossi,* 322 *N.J.Super.* 494, 510, 731 *A.*2d 523 (App.Div. 1999)).

The Appellate Division in *Geralnik* recognized that "indemnification agreements warrant strict construction." *Id.* at 16. Thus, in interpreting the same PBS–Newport Mall contract that we must interpret today, the court "construe[d] the contractual language as requiring indemnification only to the extent that PBS has been found to be at fault." *Id.* at 14. The Appellate Division reversed the trial court and "conclude[d] that the judge erred in holding that PBS was responsible for the entire verdict and defense costs." *Id.* at 16. Thus, the court in *Geralnik* clearly found that the PBS–Newport Mall contract did not require PBS to indemnify Newport Mall for the cost of defending against claims of Newport Mall's own negligence. We agree with that interpre-

tation of the indemnification provisions in the PBS–Newport contract.

In *Central Motor,* a paint distributor brought an action seeking indemnification and costs of its legal defense from paint manufacturers in connection with settlements reached in a personal injury action. *Central Motor, supra,* 251 *N.J.Super.* at 8–9, 596 *A.*2d 759. The plaintiff in *Central Motor* brought its action based on common-law indemnification, in the absence of contractual indemnification. *Id.* at 9, 12, 596 *A.*2d 759. The Law Division held that the plaintiff was not entitled to indemnification for the costs of the settlement or its legal defense. *Central Motor Parts Corp. v. E.I. duPont deNemours & Co.,* 251 *N.J.Super.* 34, 44, 596 *A.*2d 773 (Law Div.1989), *aff'd in part, remanded in part,* 251 *N.J.Super.* 5, 596 *A.*2d 759 (App.Div.1991).

In *Central Motor,* the Appellate Division was confronted with the same issue as that presented in this appeal: whether an indemnitee is entitled to indemnification for legal defense costs associated with defending against its own negligence. The panel enunciated the rule that "[a] common-law indemnitee, forced to defend claims for which its liability is only vicarious, is entitled not only to the cost of any judgment or reasonable settlement, but also to costs of defense occasioned by the indemnitor's fault." *Central Motor, supra,* 251 *N.J.Super.* at 9, 596 *A.*2d 759. The court concluded that "an indemnitee who has defended against allegations of its independent fault may not recover its costs." *Id.* at 10, 596 *A.*2d 759. The panel noted that "[t]he reported cases diverge on the question [of] what it means for a party to defend against allegations of its independent fault, . . . and how to determine whether the party has done so." *Ibid.* The court stated that "[s]ome decisions suggest that courts should look to the pleadings to find the answer." *Ibid.* (discussing *Conrad v. Suhr,* 274 *N.W.*2d 571, 578 (N.D.1979) (finding that if indemnitee had defended itself against allegations of its independent fault, it could not collect counsel fees, and question of who indemnitee was defending could be determined based on pleadings alone), and *Weston v. Globe Slicing Mach. Co.,* 621 *F.*2d 344, 349 (9th Cir.1980) (approving of *Conrad's* disallowance of counsel fees because indemnitee "was defending itself against allegations of [its] own negligence")).

However, the Appellate Division concluded that "[t]he better decisions, whose principles we hold shall apply in New Jersey, take an after-the-fact approach and permit an indemnitee's recovery of counsel fees 'so long as the indemnitee is [adjudicated] free from active wrongdoing regarding the injury to the plaintiff and has tendered the defense to the indemnitor at the start of the litigation.'" *Id.* at 11, 596 *A.*2d 759 (quoting *Piedmont Equip. Co. v. Eberhard Mfg. Co.,* 99 *Nev.* 523, 665 *P.*2d 256, 258–259 (1983)).

The court maintained that "[a]llegations in the pleadings may be a starting point to determine whether counsel fees and costs are recoverable by [an indemnitee], but the actual facts developed during trial should control." *Ibid.* (citing *Pender v. Skillcraft Indus.,* 358 *So.*2d 45, 46 (Fla.Dist.Ct.App.1978) (concluding that indemnitee who is found not to be an active wrongdoer according to evidence at trial is entitled to recover attorney fees from indemnitor); *Piedmont, supra,* 665 *P.*2d at 259–60 (holding that right of indemnitee to recover legal fees should not depend on pleadings, but rather on evidence presented as well as facts found at trial); *Hanover Ltd. v. Cessna Aircraft Co.,* 758 *P.*2d 443, 449 (Utah Ct.App.1988) ("While the charges alleged in the complaint may be a starting point to determine the recoverability of attorney fees, costs, and expenses by [an indemnitee], the actual facts developed during the course of litigation and not the mere allegations of the pleadings should control.")). Thus, the court in *Central Motor* held that "once it is determined ... that an indemnitee has defended against ... charges of its independent fault, the indemnitor is not liable for indemnification for those costs." *Id.* at 12, 596 *A.*2d 759. The Appellate Division affirmed the lower court's judgment except as it related to defense costs. *Id.* at 13, 596 *A.*2d 759. The panel therefore remanded "to permit plaintiff to attempt to prove its entitlement to its defense costs on vicarious liability claims, and for entry of a judgment for indemnification if plaintiff succeeds in making the required showing." *Ibid.*

Newport Mall argues that *"Central Motor* is *only* controlling in cases where there is *no contract."* We disagree. *Central Motor* expresses the common-law principle that "an indemnitee who has defended against allegations of its independent fault may not recover its [defense] costs." *Id.* at 10, 596 *A.*2d 759. That principle is a "default rule" that parties to a contract may choose to override contractually by expressing such an intention in unequivocal terms.

The concept of contract default rules has been described as follows:

> In an ideal world, contracts would explicitly allocate rights and responsibilities between contracting parties for all possible contingencies that might arise over the life of the contract. In reality, of course, contracting parties cannot foresee all possible contingencies that might bear on the operation of the contract. Furthermore, preparing for all foreseeable contingencies, no matter how remote, can be both difficult and costly. Consequently, all but the simplest contracts are, to some extent, obligationally incomplete—there are gaps in the contract's explicit and implicit provisions that leave the parties' obligations unspecified under certain contingencies. It falls to public institutions—courts and legislatures—to create background, or "default," rules to govern private relationships when such unaddressed contingencies arise and private ordering, thus, has failed.

> [Russell Korobkin, *The Status Quo Bias and Contract Default Rules,* 83 *Cornell L.Rev.* 608, 609–10 (1998) (footnotes omitted).]

"As a matter of well-settled legal doctrine, it is clear that an indemnity provision is to be construed in accordance with the rules for construction of contracts generally, and hence that the judicial task is to ascertain the intention of the parties...." *Doloughty v. Blanchard Constr. Co.,* 139 *N.J.Super.* 110, 116, 352 *A.*2d 613 (Law Div.1976); *see also Cozzi v. Owens Corning Fiber Glass Corp.,* 63 *N.J.Super.* 117, 121, 164 *A.*2d 69 (App.Div.1960) (stating "[a] contract of indemnity is to be interpreted in accordance with the rules governing the construction of contracts generally"). "When the meaning of the clause is ambiguous, however, the clause should be strictly construed against the indemnitee." *Ramos v. Browning Ferris Indus. of S. Jersey, Inc.,* 103 *N.J.* 177, 191, 510 *A.*2d 1152 (1986). "Thus, a contract will not be construed to indemnify the indemnitee against losses resulting

from its own negligence unless such an intention is expressed in unequivocal terms." *Ibid.*

■ The Appellate Division in this case, like the panel in *Geralnik*, held that the PBS–Newport Mall contract does not express in unequivocal terms an intention to indemnify the indemnitee (Newport Mall) against losses resulting from its own negligence. To the contrary, the Appellate Division found that the "agreement did not intend to indemnify Newport Mall against the consequences of its own negligence but limited liability indemnification to losses resulting from PBS negligence." Further, the panel found that "[t]here was clearly evidence of the Mall's independent negligence with respect to the leaky condition of the roof." Like the court in *Geralnik*, we hold that Newport Mall's defense costs were losses resulting from its own negligence and not that of PBS. The right to legal costs follows the right to indemnification. Because the PBS–Newport Mall contract failed to express in unequivocal terms that PBS would indemnify Newport Mall for legal expenses incurred in defending itself against claims of its own negligence, we conclude that PBS cannot be held responsible for those costs. That result follows because the PBS–Newport Mall contract does not expressly state that PBS will indemnify Newport Mall for the costs of defending against claims of Newport Mall's negligence. Therefore, the *Central Motor* default rule applies and fills the gap that the parties left open in their contract.

■ We also adopt the "after-the-fact" approach articulated in *Central Motor*, which permits an indemnitee to recover counsel fees if the indemnitee is adjudicated to be free from active wrongdoing regarding the plaintiff's injury, and has tendered the defense to the indemnitor at the start of the litigation. *Central Motor, supra*, 251 *N.J.Super.* at 11, 596 *A.2d* 759. Here, the jury determined that Newport Mall was negligent and that its negligence was a proximate cause of 40% of plaintiff's injuries. Therefore, Newport Mall was independently negligent and may not recover counsel fees from PBS based on the default rule.

## III.

Next, we consider whether the Appellate Division erred in relying on principles of insurance law to impose a duty on PBS to defend Newport Mall. Newport Mall argues that one of the purposes of Paragraph 12 in the contract, which required PBS to obtain insurance naming Newport Mall as an additional insured, was to implement PBS's obligation to defend Newport Mall on claims that had been insured against. The Appellate Division agreed with Newport Mall and held that "[w]hen the complaint was filed which stated a claim constituting a risk insured against, a duty to defend came into being irrespective of the claim's merit." We find that the Appellate Division's reliance on insurance law was misplaced and constituted reversible error.

The inapplicability of insurance law to the indemnity provisions of the PBS–Newport contract was adequately addressed by the court in *Geralnik:*

We, of course, recognize the broad construction we have given insuring agreements providing coverage to an insured for consequences "arising out of" the insured's acts. *See, e.g., Cty. of Hudson v. Selective Ins. Co.,* 332 *N.J.Super.* 107, 113–13, 752 A.2d 849 (App.Div.2000); *Liberty Vill. Assocs. v. West American Ins.,* 308 *N.J.Super.* 393, 396, 706 A.2d 206 (App.Div.1998); *Harrah's Atlantic City, Inc. v. Harleysville Ins. Co.,* 288 *N.J.Super.* 152, 157–59, 671 A.2d 1122 (App.Div.1996); *Franklin Mutual Ins. Co. v. Security Indemn. Ins. Co.,* 275 *N.J.Super.* 335, 338–39, 646 A.2d 443 (App.Div.1994); *Westchester Fire Ins. Co. v. Continental Ins. Cos.,* 126 *N.J.Super.* 29, 35, 312 A.2d 664 (App.Div.1973), *aff'd o.b.,* 65 *N.J.* 152, 319 A.2d 732 (1974); *accord, American Motorists Ins. Co. v. L–C–A Sales Co.,* 155 *N.J.* 29, 36, 713 A.2d 1007 (1998). However, the principles that guide us in construing insurance contracts are antithetical to those we apply in other settings. For example, where the language of a policy will support two meanings, one favorable to the insured and the other favorable to the insurer, the interpretation sustaining coverage is normally applied. *County of Hudson v. Selective Ins. Co.,* 332 *N.J.Super.* at 107, 752 A.2d 849. Purchasers of insurance are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. *Kievit v. Loyal Protect. Life Ins. Co.,* 34 *N.J.* 475, 170 A.2d 22 (1961). This policy is not applicable to indemnification agreements in other contexts. While parties should generally be afforded freedom in allocating risks emanating from their agreements, the policy barring indemnification for losses attributable to the indemnitee's own negligence in the absence of a clearly expressed intent to the contrary is one of longstanding. While we have applied the "substantial nexus" test in determining the causal links between an act and its consequences in determining the scope of an indemnification clause, *see Leitao v. Damon G. Douglas Co.,* 301 *N.J.Super.* 187,

693 *A*.2d 1209 (App.Div.1997), we have not otherwise borrowed insurance principles in determining whether an agreement to hold the indemnitee harmless covers losses attributable to the indemnitee's own negligence.

[*Geralnik, supra*, slip op. at 15–16.]

It is the language of the PBS–Newport contract that controls the relationship and obligations of the parties, not PBS's insurance policy. As noted previously, the contract does not express an unequivocal intention by the parties to have PBS indemnify Newport Mall for the costs of defending against claims of Newport Mall's own negligence. Furthermore, Travelers Insurance Company is not a party to this appeal. If Newport Mall has a claim as a named insured under PBS's policy, then Newport Mall should assert that claim against Travelers Insurance Company in a separate proceeding.

## IV.

To summarize, we hold that, absent explicit contractual language to the contrary, an indemnitee who has defended against allegations of its own independent fault may not recover the costs of its defense from an indemnitor. Here, the PBS–Newport Mall contract failed to express in unequivocal terms that PBS would indemnify Newport Mall for legal fees incurred in defending itself against claims of its own negligence. Because Newport Mall was found to be 40% negligent, it is not entitled to indemnification for its legal costs. The judgment of the Appellate Division is reversed.

*For reversal*—Justices STEIN, COLEMAN, LONG, LaVECCHIA and ZAZZALI—5.

*Opposed*—None.