**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5272-15T4

THE ESTATE OF LUIS CARLOS TAVARES
and PAULA PIRES, his wife, serving
as Administratrix Ad Prosequendum
of the ESTATE OF LUIS CARLOS TAVARES,

    Plaintiff,

v.

LUCAS CONSTRUCTION GROUP, INC.,
FREDERIC R. HARRIS, INC., DMJM +
HARRIS, INC., DMJM HARRIS/AECOM,
and AECOM,

    Defendants-Respondents,

and

COUNTY OF MIDDLESEX,

    Defendant-Appellant,

and

v.

LIONEL LUCAS, ANTONIO LUCAS,
CONSOLIDATED RAIL CORPORATION,
TOWNSHIP OF WOODBRIDGE, and
TRADEWINDS CONSTRUCTION, INC.,

    Defendants.

_____

Argued May 8, 2018 — Decided June 20, 2018

Before Judges Yannotti, Carroll and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-2713-11.

Jerald J. Howarth argued the cause for appellant (Howarth & Associates, LLC, attorneys; Jerald J. Howarth and Purnima D. Ramlakhan, on the briefs).

James G. Serritella argued the cause for respondent Lucas Construction Group, Inc. (Biancamano & DiStefano, PC, attorneys; James G. Serritella, on the brief).

William F. Waldron, Jr., argued the cause for respondents Frederic R. Harris, Inc., DMJM + Harris, Inc./AECOM and AECOM (Marshall, Dennehey, Warner, Coleman & Goggin, attorneys; William F. Waldron, Jr., and Patricia M. McDonagh, on the brief).

PER CURIAM

The County of Middlesex (County) appeals from various orders entered by the trial court, which held that the County was not entitled to contractual indemnification from defendants Lucas Construction Group, Inc. (Lucas), or Frederic R. Harris, Inc., DMJM + Harris, Inc., DMJM Harris/AECOM, and AECOM (collectively, AECOM) for attorney's fees it incurred in defending claims brought against it in an underlying lawsuit. We affirm.

This appeal arises from the following facts. Lucas entered into a contract with the County to provide "all labor, materials, and equipment" for a bridge replacement project in Avenel, New Jersey (the Lucas contract). The contract incorporated Supplementary Specifications and the New Jersey Department of Transportation (NJDOT) 2001 Standard Specifications for Road and Bridge Construction (NJDOT Specifications). The contract contained several indemnity provisions.

AECOM also entered into a contract with the County to provide professional engineering consulting services in connection with the bridge replacement project (the AECOM contract). These services required AECOM to provide a full-time inspector to monitor Lucas's work, ensure compliance with the plans and specifications for the project, and prepare and furnish daily reports. The County was required to provide its own project manager to oversee operations at the project site as well. The AECOM contract also contained a contractual indemnity provision.

On August 11, 2009, Luis Carlos Tavares (Tavares) was fatally injured while working as a laborer for Lucas on the bridge replacement project. On April 17, 2013, Tavares's estate and his wife, the administrator of the estate (plaintiffs), filed an amended complaint naming Lucas, the County, and AECOM as

defendants. Lionel Lucas, Antonio Lucas, Consolidated Rail Corporation (Conrail), the Township of Woodbridge (Township), and Tradewinds Construction, Inc. (Tradewinds) were also named as defendants.

Plaintiffs alleged that as a result of the negligence of the County, Lucas, and AECOM, a 1500 pound steel plate separated from a Campbell Hook assembly and struck Tavares's head, causing his death. Plaintiffs also claimed several defendants, including Lucas, AECOM, and the County, were negligent in failing to inspect, maintain, repair, and supervise workplace equipment and components; provide a safe place to work; and establish, provide, and implement proper training. Plaintiffs further alleged the County, Lucas, and AECOM permitted unsafe practices at the workplace, violated accepted construction-site policies and procedures, and otherwise failed to fulfill contractual responsibilities regarding the workplace.

Evidence obtained in discovery revealed that Lucas used damaged construction equipment, including the Campbell Hook assembly, to lift the 1500 pound plate at the time Tavares was injured. The hoisting assembly that Lucas used to raise the subject plate included two hooks, which engaged into holes in the steel plate. The hooks lacked a safety pin to prevent the plate from dislodging. Antonio Lucas, who was operating the Caterpillar

4                                                                    A-5272-15T4

excavator, which was moving the plate at the time of the incident, testified that he did not inspect the hooks before use.

AECOM assigned William J. Meister to act as field inspector for the project. At his deposition, Meister testified that on the day of the incident he was on vacation and not present at the work site. Meister claimed he advised Lucas, the County, and his superiors that he would be on vacation the week in which the incident occurred. Meister also acknowledged that AECOM was responsible for Lucas's progress, and "blatant" or "conspicuous" safety issues.

Ronald M. Sender, a supervising engineer for the County, testified that it was his and the County's policy or procedure to ensure coverage if the resident engineer was absent from a work site. Sender said, "[It is] common practice that if someone is going on vacation, they say I won't be here, this person will be . . . doing the inspection and reporting to you." However, when asked who had responsibility to ensure that a substitute resident engineer was present, Sender stated "[n]o one at the [C]ounty would ensure [that]."

On April 25, 2014, the County filed a motion for summary judgment seeking dismissal of plaintiffs' complaint and all cross-claims against it, and motions for summary judgment against Lucas and AECOM for contractual indemnification. Conrail and the

Township filed motions for summary judgment, and Lucas, Antonio Lucas, and Lionel Lucas sought summary judgment on liability. In addition, Lucas and AECOM filed cross-motions for summary judgment on the County's claims against them for contractual indemnification.

On May 13, 2014, the motion judge dismissed the claims against Conrail, the Township, Antonio Lucas, and Lionel Lucas, and granted Lucas's motion for summary judgment on liability.[1] In addition, on May 13, 2014, the judge heard oral argument on the County's motion for summary judgment on the claims asserted against it, which was denied by order of the same date.

The judge determined that there was a genuine issue of material fact as to whether the County violated its own policy or practice in failing to oversee safety at the work site on the day of the accident. In so ruling, the judge stated:

> Sender affirmed that it is . . . general practice to ensure that there was coverage [at the work site] if the resident engineer was away on vacation.
>
> The engineer on site seems to have the responsibility, in this case with these

---

[1] Lucas obtained liability insurance through Penn National Insurance Company and initially provided a defense to the County; however, the County's insurer, Mid-Continent/Great American Insurance Group, acknowledged that it had issued an Owner's and Contractor's Protective Policy to the County, and that this policy was primary. Howarth & Associates, LLC then assumed the defense of the County.

contracts, to ensure that there are no blatant safety violations. [It is] up to a jury to decide whether failing to wear a helmet is a blatant safety violation, or lifting a heavy metal plate without prior notice . . . is a blatant safety violation, or utilizing the hooks that were utilized.

. . . .

I am satisfied that a reasonable jury can conclude that the [C]ounty violated its practice of ensuring safety coverage by failing to make certain that a person was on site who could have evaluated the safety hazards.

The County filed a motion for reconsideration. The County argued that AECOM was not contractually responsible for safety at the work site, and as such, the County's duty to plaintiff could be no greater than AECOM's duty. The judge denied the motion.

The judge found that reconsideration was not warranted because the County had presented "no new material evidence for the [c]ourt to consider." The judge stated:

Here, the County may also be liable for failing in its exclusive duty of providing a replacement for a supervising engineer while he was away on vacation. I say "may" because it seems, to me, to be clear that that is a question of fact and a question . . . for a fact-finder.

The language of the scope of work for professional services for this project, combined with the deposition of [Mr.] Sender, some of which was read into the record . . . raises an issue of fact as to whether

7

> defendant should have provided a replacement engineer for Mr. Meister while he was absent.
>
> The County cannot eliminate all questions of fact relating to its responsibility, direct or indirect, in this matter. Because it cannot do so and because none of the material presented before the [c]ourt appears . . . to the [c]ourt to be new, the [c]ourt denies the motion . . . to reconsider its earlier ruling denying summary judgment.

On June 6, 2014, the judge heard oral argument on the cross-motions by Lucas, AECOM, and the County for summary judgment on the indemnification claims. The judge stated he would issue a written opinion on the matter; however, the judge did not issue an opinion. Instead, the judge filed various orders dated August 14, 2014, which granted the County's cross-motions for summary judgment seeking indemnification from Lucas and AECOM, and ruled that Lucas and AECOM owed contractual indemnity to the County.

On September 2, 2014, AECOM's attorney sent a letter to the trial court requesting "additional action, clarification, and/or motion practice" with regard to the August 14, 2014, orders. On September 11, 2014, the judge acknowledged on the record that the orders issued on August 14, 2014, were entered in error.

The judge further acknowledged that no decision on the County's motions on indemnification had been made, and there was no letter opinion accompanying the orders inadvertently filed on August 14, 2014. The judge entertained arguments from the County,

Lucas, and AECOM on the issue of indemnification, and by order, dated September 15, 2014, and letter opinion, dated September 16, 2014, the judge vacated the August 14, 2014 orders and denied the County's motions for summary judgment on the issue of indemnification.

In October 2014, plaintiffs settled their claims against AECOM and Tradewinds. Moreover, in November 2014, plaintiffs provided the County with a stipulation dismissing with prejudice plaintiffs' claims against the County.

On January 20, 2015, AECOM filed a motion for summary judgment to dismiss the County's claims against it for indemnification. Lucas filed a cross-motion seeking similar relief. The County filed two cross-motions for summary judgment on indemnification as to Lucas and AECOM, respectively.

On April 17, 2015, another Law Division judge heard oral argument on the four motions. By order dated June 24, 2015, the judge granted the motions by Lucas and AECOM, and denied the County's motions. The County subsequently filed a motion for reconsideration, which was heard on September 4, 2015. By order dated July 14, 2016, the judge denied the County's motion. This appeal followed.

On appeal, the County argues: (1) the matter must be remanded as the County was entitled to a hearing to establish it was

9

negligence-free and could seek counsel fees pursuant to the indemnity provisions in the Lucas and AECOM agreements; (2) the July 14, 2016 order must be reversed because the trial court erroneously denied the County's motion for summary judgment on liability; (3) the County is entitled to attorney's fees under Kieffer v. Best Buy, 205 N.J. 213 (2011); (4) both Lucas and AECOM must indemnify the County pursuant to the terms of their respective contracts; (5) the County is entitled to attorney's fees from Lucas and AECOM on the theory of common law indemnification; and (6) Lucas owes the County contractual indemnity pursuant to Azurak v. Corporate Property Investors, 175 N.J. 110 (2003).

## II.

Relying upon the court's decision in Central Motor Parts Corp. v. E.I. duPont deNemours & Co., 251 N.J. Super. 5 (App. Div. 1991), the County first argues the trial court erroneously denied it the opportunity for a trial, plenary hearing, or "settlement proceeding" establishing that it had no liability to plaintiffs and therefore was entitled to indemnification by Lucas and AECOM. The County contends that where there is no trial or settlement proceeding establishing liability, the so-called "after-the-fact" approach requires the trial court to afford the County the opportunity to prove that it was "fault-free." We disagree.

The "after-the-fact" approach, first articulated in <u>Central Motor</u>, "permits an indemnitee to recover counsel fees if the indemnitee is adjudicated to be free from active wrongdoing regarding the plaintiff's injury, and has tendered the defense to the indemnitor at the start of the litigation." <u>Mantilla v. NC Mall Assocs.</u>, 167 N.J. 262, 273 (2001) (citing <u>Cent. Motor</u>, 251 N.J. Super. at 11).

"[A]n indemnitee who defends <u>exclusively</u> against the acts of the indemnitor may recoup from the indemnitor the reasonable costs of its defense." <u>Cent. Motor</u>, 251 N.J. Super. at 10 (emphasis in original). "Costs incurred by a[n] [indemnitee] in defense of its own active negligence or independent warranties are not recoverable, but those costs incurred on defending claims on which the [indemnitee] is found only derivatively or vicariously liable are recoverable." <u>Id.</u> at 11.

The purpose of the "after-the-fact" approach is not to determine whether an indemnitee is ultimately "fault-free." <u>Id.</u> at 10—12. Rather, it is for determining whether an indemnitee has defended against claims of its own independent fault or the fault of the indemnitor. <u>Ibid.</u> A settlement proceeding fixing liability is only necessary where the "indemnitee incurred legal costs defending its vicarious liabilities." <u>Id.</u> at 12—13.

A-5272-15T4

Here, the record shows that at all times throughout this litigation, the County has solely been defending against plaintiffs' claims against the County for its own alleged acts of negligence. Plaintiffs did not claim that the County was only derivatively or vicariously liable for the alleged negligence of Lucas or AECOM.

Thus, even if the County were adjudicated "fault-free" on the claims asserted against it for its own alleged independent acts of negligence, the County still would not be entitled to contractual indemnity from AECOM or Lucas for the attorney's fees incurred in defending against those claims. Accordingly, the trial court did not err by failing to conduct an evidentiary hearing to determine if the County was "fault-free."

### III.

Next, the County argues that the trial court erred by denying its initial motion for summary judgment on the claims plaintiffs asserted against it in the amended complaint, and by thereafter denying its motion for reconsideration. Again, we disagree.

Summary judgment must be granted if "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on

the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid.

In reviewing a trial court's decision to grant or deny a motion for summary judgment, we conduct a de novo review, using "the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pitt., 224 N.J. 189, 199 (2016). We must determine whether there are substantial, genuinely disputed issues of fact, and not simply issues of an "immaterial or . . . insubstantial nature." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). The non-moving party cannot defeat a summary judgment motion "merely by pointing to any fact in dispute." Ibid.

Here, plaintiffs asserted claims against the County for its alleged negligence in failing to follow its own policies, procedures, and practices with regard to supervision of the worksite. Under its contract with AECOM, the County was required to provide its own project manager to oversee the operations at the work site, and AECOM was required to prepare and furnish daily reports to the County, creating an ongoing dialogue between Meister and Sender.

The trial court correctly found that there was a genuine issue of material fact as to whether the County retained control

over the work site and whether the County provided the proper supervision of the work. Thus, the trial court did not err by denying the County's motion for summary judgment on the claims plaintiffs asserted against the County in their amended complaint.

Moreover, the County has failed to establish that the trial court erred by denying its motion for reconsideration of the order denying summary judgment. A motion for reconsideration is committed to the sound discretion of the court, which should be "exercised in the interest of justice." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

Reconsideration is appropriate only when a court has rendered a decision "based upon a palpably incorrect or irrational basis," or failed to consider or "appreciate the significance of probative, competent evidence." Ibid. (quoting D'Atria, 242 N.J. Super. at 401-02). Here, the County failed to show that in denying summary judgment, the court had ruled on an incorrect or irrational basis, or failed to appreciate probative and competent evidence. Therefore, the court did not err by denying the County's motion for reconsideration.

IV.

The County argues the trial court erroneously relied upon the "risk-shifting analysis" of Azurak and Mantilla, rather than the

14                                                          A-5272-15T4

"after-the-fact" approach enunciated in <u>Kieffer</u> and <u>Central Motor</u> for "fault-free" indemnitees that seek "counsel fees only." The County therefore argues that the trial court erred by denying its motion for summary judgment and granting the motions by Lucas and AECOM for summary judgment on the issue of indemnification.

<u>Central Motor</u> established that the trial court should review the record to determine whether an indemnitee has incurred costs defending against claims against the indemnitor or claims against the indemnitee. 251 N.J. Super. at 11. "<u>Central Motor</u> expresses the common-law principle that 'an indemnitee who has defended against allegations of its independent fault may not recover its [defense] costs.'" <u>Mantilla</u>, 167 N.J. at 272 (quoting <u>Cent. Motor</u>, N.J. Super. at 10).

In <u>Mantilla</u>, the Court held that an indemnitee cannot recover legal expenses incurred in defending itself against independent claims based upon its own negligence unless the parties explicitly agree otherwise. <u>Id.</u> at 275. In that case, a patron brought a negligence claim against the owner of a shopping mall and its janitorial-services contractor. <u>Id.</u> at 264. The case went to trial and the jury returned a verdict finding the owner forty-percent at fault, the contractor fifty-percent at fault, and the plaintiff ten-percent at fault. <u>Id.</u> at 265. The owner then sought indemnification from the janitorial-services contractor. <u>Ibid.</u>

The Court held, however, that "absent explicit contractual language to the contrary, an indemnitee who has defended against allegations of its own independent fault may not recover the costs of its defense from an indemnitor." Id. at 275. In addition, as previously stated, the Court adopted the "after-the-fact" approach previously articulated in Central Motor. Id. at 273 (citing Central Motor, 251 N.J. Super. at 10—11).

In Azurak, the Court reaffirmed the principles enunciated in Mantilla, and held that a "broad form" indemnification clause, which attempted "to include an indemnitee's negligence within an indemnification agreement without explicitly referring to the indemnitee's 'negligence' or 'fault,' . . . is no longer good law." 175 N.J. at 112. The Court stated that Mantilla reaffirmed the "'bright line' rule requiring 'explicit language' that indemnification and defense shall include the indemnitee's own negligence." Ibid. (quoting Azurak v. Corp. Prop. Inv'rs, 347 N.J. Super. 516, 523 (App. Div. 2002)).

Most recently, in Kieffer, the Court considered the terms of an indemnification agreement executed between a property owner and a cleaning contractor, and another indemnification agreement between the cleaning contractor and a sub-contractor. 205 N.J. at 216. The trial on the plaintiff's negligence claims resulted in a no-cause verdict for all three defendants. Ibid. The trial court

held, however, that the sub-contractor must indemnify the contractor and, in turn, the property owner. Id. at 220.

The Court held that the trial court erred by requiring the sub-contractor to indemnify the contractor and, ultimately, the property owner. Id. at 217. The Court determined that the sub-contract did not require the sub-contractor to indemnify the contractor and the property owner for their legal costs in the absence of a determination that plaintiff's injuries were caused by the sub-contractor's "negligence, omission, or conduct." Ibid. The trial court never made a finding of negligence, and therefore, the sub-contractor was not contractually responsible for paying the defense costs of the property owner and contractor. Id. at 225.

In this case, the County argues that it is not seeking indemnification for its own negligence, but rather, that it is only seeking attorney's fees based on the language of the contract. The County further argues that Kieffer applies in this case because it has essentially been found to be "fault-free." Again, we disagree.

As stated previously, plaintiffs' amended complaint set forth independent claims of negligence against the County arising from the County's own alleged acts of negligence, and the County moved for summary judgment to dismiss these claims. The trial court

found, however, that there were genuine issues of material fact regarding the County's potential liability for its own independent acts of negligence.

Moreover, in the amended complaint, plaintiffs did not assert that the County was derivatively or vicariously liable for the alleged negligence of Lucas or AECOM. The record shows that throughout the litigation, the County has been defending against allegations of its own negligence. Therefore, the County's reliance on Kieffer is misplaced.

We conclude the trial court engaged in the proper analysis in reviewing the County's motions for summary judgment seeking contractual indemnification from Lucas and AECOM, and correctly decided as a matter of law that the County is not entitled to reimbursement of its attorney's fees. The court correctly determined that the County incurred the fees defending against claims of its own independent negligence and not defending claims of derivative or vicarious liability.

Therefore, the trial court did not err by granting Lucas's and AECOM's motions for summary judgment on the County's claims for indemnification, and denying the County's motions for summary judgment seeking indemnification from Lucas and AECOM.

V.

The County further argues that it is entitled to indemnification for its attorney's fees pursuant to its agreements with Lucas and AECOM.

The interpretation of a contract is a legal question, which is reviewed de novo by this court, and "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Kieffer, 205 N.J. at 222—223 (quoting Manalapan Realty, LP v. Twp. Comm., 140 N.J. 366, 378 (1995)). Therefore, an appellate court must "look at the contract with fresh eyes." Id. at 223.

"The objective in construing a contractual indemnity provision is the same as in construing any other part of a contract — it is to determine the intent of the parties." Ibid. (citing Mantilla, 167 N.J. at 272). "The judicial task is simply interpretative; it is not to rewrite a contract for the parties better than or different from the one they wrote for themselves." Ibid. The court must give contractual terms "their plain and ordinary meaning." Ibid. (quoting M.J. Paquet, Inc. v. N.J. Dep't of Transp., 171 N.J. 378, 396 (2002)).

As a general rule, an indemnity contract "will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in

unequivocal terms" in the agreement. <u>Ramos v. Browning Ferris Indus., Inc.</u>, 103 N.J. 177, 191 (1986) (citing <u>Longi v. Raymond-Commerce Corp.</u>, 34 N.J. Super. 593, 603 (App. Div. 1955)).

"A party ordinarily is responsible for its own negligence, and shifting liability to an indemnitor must be accomplished only through express and unequivocal language." <u>Kieffer</u>, 205 N.J. at 224. "[A]bsent statutory or judicial authority or express contractual language to the contrary, each party is responsible for its own attorney's fees." <u>Ibid.</u> Moreover, if the meaning of an indemnity provision in a contract is ambiguous, the provision should be "strictly construed against the indemnitee." <u>Id.</u> at 223 (quoting <u>Mantilla</u>, 167 N.J. at 272).

A. <u>The Lucas Contract</u>

The County relies upon three paragraphs in the Lucas contract to support its claim for contractual indemnity. The County first relies on paragraph 107.22 of the Supplementary Specifications, which provides:

> The contractor shall save, protect, indemnify and hold harmless . . . [Conrail], [the County], its employees and/or agents from any and all injuries or claims for injuries or damages to persons or property caused by the Contractor or its employees, agents and/or subcontractors in undertaking the work contemplated by these bid specifications. The indemnification/hold harmless provided to the County hereunder shall survive the completion

of the work and final acceptance of the project by the Board of Chosen Freeholders.

Next, the County cites the "Sanitary, Health and Safety Provisions," of the NJDOT Specifications, which were incorporated by reference in the contract. Under subsection 107.10(B)(1)(b) of the NJDOT Specifications, "[t]he Contractor is solely responsible for creating, implementing, and monitoring [a] [Safety] Program." Further, paragraph 107.10(B)(2) states that

> [t]he Contractor is solely responsible for all aspects of the [p]rogram including, but not limited to, the development, revision, implementation, monitoring, and updating of the [p]rogram. Pursuant to Subsection 107.22, the [c]ontractor shall defend, indemnify, and save harmless the [County] from any and all liability from any actions arising directly or indirectly or alleged to arise from the [p]rogram.

In addition, the County relies upon subsection 107.22(2), "Risks Assumed by the Contractor," of the NJDOT Specifications, which provides:

> The [c]ontractor shall bear the risk of claims, just or unjust, by third persons made against the [c]ontractor or the [County], on account of injuries (including wrongful death), loss or damage of any kind whatsoever arising or alleged to arise out of or in connection with the performance with the [w]ork. The risk of claims, whether or not actually caused by or resulting from the performance of the [w]ork or out of or in connection with the [c]ontractor's operations or presence at or in the vicinity of the construction site or [County] premises,

whether such claims are made and whether such injuries, loss, and damages are sustained, applies at any time both before and after [a]cceptance.

However, the indemnification language contained in these three provisions of the Lucas contract falls short of the explicit, "bright-line" contractual language required for indemnification of an indemnitee's own alleged acts of negligence. Paragraph 107.22 of the Supplementary Specifications does not mention the County's negligence. Rather, paragraph 107.22 states that Lucas shall indemnify the County from any and all injuries, claims, injuries, or damages to persons or property caused by Lucas's own negligence.

Subsection 107.10 of the NJDOT Specifications also does not mention the County's negligence. Instead, this provision requires Lucas to implement a safety program, states that Lucas is solely responsible for all aspects of the program, and directs Lucas to "defend, indemnify, and save harmless the [County] from any and all liability from any actions arising directly or indirectly or alleged to arise from the [p]rogram" pursuant to subsection 107.22. The agreement does not expressly state that Lucas shall indemnify the County for any actions that may arise from its own negligence with regard to the program.

Furthermore, subsection 107.22 of the NJDOT Specifications does not clearly and unequivocally impose on Lucas an obligation

to indemnify the County for its own negligence. Indeed, the indemnification language in subsection 107.22 is similar to the indemnity provision at issue in Mantilla. 167 N.J. at 266.

That provision stated, "Contractor shall indemnify and save Owner harmless from any and all loss, cost, expense, damages, claims and liability for bodily injury, death or property damage occurring in and about the Shopping Center as a result of the work performed and materials and equipment installed or furnished by Contractor hereunder." Ibid. As the Mantilla Court held, this language does not provide for indemnification for claims arising out of the indemnitee's own negligence. Id. at 276. The same conclusion applies in this case.

In addition, there is no ambiguity in the contract on the issue of whether Lucas must indemnify the County for the County's own negligence. Even if the agreement was ambiguous, any ambiguity on the issue of indemnification must be "strictly construed against the indemnitee." Kieffer, 205 N.J. at 223 (quoting Mantilla, 167 N.J. at 272).

B. The AECOM Contract

In support of its claim for indemnification against AECOM, the County relies upon paragraph 120 of the AECOM contract, "Responsibility for Claims and Liability," which states in pertinent part that AECOM

shall indemnify and save harmless . . . [the County], its officers, agents and employees from and against any and all claims, suits, actions, damages, losses, demands and costs of every name and description resulting from or claimed to result from any negligent act, error or omission of [AECOM] and/or any of its Subconsultant(s)/Subcontractor(s) in the performance of services or resulting from the non-performance of the [c]onsultant and/or any of its Subconsultant(s)/Subcontractor(s) of any of the covenants and specifications of this [p]roposal, including any supplements thereto, and such [indemnification] shall not be limited by reason of any insurance coverage. The [c]onsultant shall provide all professional services required by the County in defending all claims against the County which relate in any way to alleged errors, omissions or alleged failure to supervise by the [c]onsultant arising out of this contract without additional compensation. The County shall recover from the [c]onsultant its attorney's fees, expert witness costs, cost of consultant(s) necessary for evaluation of the project, and any other costs incurred.

This provision of the AECOM contract does not, however, include language that meets the "bright-line" standard required to compel indemnification for an indemnitee's own alleged acts of negligence. The contract does not contain any reference to the County's negligence. Rather, the indemnification clause expressly focuses on AECOM's negligence and only requires AECOM to indemnify the County for any claims or damages arising from AECOM's negligence.

24

Moreover, there is no ambiguity in the contract with regard to indemnification of the County for its own negligence. Even if the indemnification clauses were ambiguous, any ambiguity must be "strictly construed against the indemnitee." Kieffer, 205 N.J. at 223 (quoting Mantilla, 167 N.J. at 272).

We therefore conclude the County is not entitled to contractual indemnification for the attorney's fees the County incurred in defending the claims asserted against the County based on its own negligence.

VI.

The County also argues that it is entitled to common law indemnification from Lucas and AECOM for the attorney's fees it incurred in this lawsuit. Again, we disagree.

In Central Motor, we held that "[a] common-law indemnitee, forced to defend claims for which its liability is only vicarious, is entitled not only to the cost of any judgment or reasonable settlement, but also to costs of defense occasioned by the indemnitor's fault." 251 N.J. Super. at 9. However, "the right of indemnity is granted only to those whose liability is secondary and not primary, i.e., whose negligence is not morally culpable but is merely constructive, technical, imputed or vicarious." Pub. Serv. Elec. & Gas Co. v. Waldroup, 38 N.J. Super. 419, 432 (App. Div. 1955). Moreover, common law indemnity is applicable only in

25                                                    A-5272-15T4

the absence of an express agreement between parties. <u>Promaulayko v. Johns Manville Sales Corp.</u>, 116 N.J. 505, 511 (1989).

Here, the Lucas and AECOM contracts establish the relationships between the parties with regard to indemnification. As we have determined, the County is not entitled to indemnification under either contract for the costs it incurred in defending claims asserted against the County for its own negligence.

Furthermore, the record does not support the County's assertion that it incurred the legal costs defending claims of derivative or vicarious liability. Plaintiffs did not assert any claims against the County for such liability. Therefore, the County is not entitled to common law indemnification from Lucas or AECOM for reimbursement of the counsel fees it incurred in this lawsuit.

Finally, the County argues that under <u>Azurak</u>, Lucas owed it contractual indemnity for the County's own negligence. We find the County's arguments on this issue lack sufficient merit to warrant discussion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5272-15T4