**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2000-19

SHIRLEY SHANK,

      Plaintiff-Appellant/
Cross-Respondent,

v.

BAY PLAZA ASSOC., LLC, and
PASBJERG DEVELOPMENT CO.,

      Defendants-Respondents/
Cross Appellants,

and

STRAIGHT EDGE STRIPING,
LLC,

      Defendant/Third-Party
Plaintiff-Respondent,

v.

SHERWIN WILLIAMS COMPANY,

      Third-Party Defendant.

_____

Submitted March 22, 2021 – Decided May 13, 2021

Before Judges Sabatino and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2831-17.

Brandon J. Broderick, LLC, attorneys for appellant/cross-respondent (Gregory D. Shaffer, on the briefs).

Dengler & Lipski, attorneys for respondents/cross-appellants (Christopher P. Morgan, of counsel and on the briefs).

Law Offices of James H. Rohlfing, attorneys for respondent (Susanne D. Montgomery, on the brief).

PER CURIAM

In this slip-and-fall personal injury case, plaintiff Shirley Shank appeals from the summary judgment order and the subsequent denial of reconsideration dismissing her complaint against defendants Bay Plaza Associates, LLC (Bay Plaza), Pasbjerg Development Co. (Pasbjerg), and Straight Edge Striping, LLC (Straight Edge).[1]  Bay Plaza and Pasbjerg cross-appeal from the trial court's order dismissing their contractual indemnity claim against Straight Edge.  After a review of the respective contentions in light of the record and applicable principles of law, we affirm.

---

[1]  The court also granted summary judgment to third-party defendant Sherwin Williams.

We discern the following facts from the record. Bay Plaza is the owner of a retail shopping center located in Toms River. One of the tenants is a ShopRite supermarket. Pasbjerg is the manager of the shopping center property.

In March 2016, Pasbjerg contracted with Straight Edge to restripe parking stalls, directional arrows, and traffic stripes in the ShopRite parking lot. The contract included an indemnity provision.

On March 23, 2016, Straight Edge striped the parking lot using Sherwin Williams Hotline Fast Dry Latex Traffic Marking Paint. The paint was applied directly on top of the existing parking lot markings. Straight Edge was never informed by anyone of any problems with the work. Straight Edge restriped the parking lot again in 2018.

At the time of these events, plaintiff was employed by the ShopRite in the Bay Plaza shopping center. She had worked in the store for several years. On July 10, 2016, plaintiff completed her shift at approximately 11:00 p.m. Her co-worker, Doug Rabel, offered to drive plaintiff to the employee parking lot because it was raining. Plaintiff stated it had been lightly raining for about five minutes before she left the store. As she walked out, it was drizzling. Rabel's truck was parked in the parking lot in front of the store.

 A-2000-19

Plaintiff stated that she stepped and then fell on a white directional arrow painted on the vehicle travel lane directly in front of the store as she was walking to Rabel's vehicle. However, she also said that although she was looking at the ground as she walked, she did not recall seeing the directional arrow prior to falling.

During his deposition, Rabel stated he was walking in front of plaintiff as they headed to his truck. He did not see her fall. When he turned around, she was lying on the ground near an arrow in the travel lane of the parking lot.

Plaintiff commenced suit, alleging all the defendants negligently allowed a dangerous condition to exist on the property and failed to warn of the dangerous condition thereby causing her to sustain injuries. Straight Edge subsequently filed a third-party complaint against Sherwin Williams.

To support her allegations of negligence, plaintiff retained an engineer, Jack Krafchik, who issued a report after inspecting the shopping center parking lot on June 1, 2019.

Although Krafchik measured the slip resistance of the directional arrows, he did not include the measured results in his report "due to the passage of time between the date of the incident and [his] inspection, and the subsequent application . . . of an additional coat of white paint on top of the coat applied in

2016 . . . ." Krafchik stated the surface conditions at the time of his inspection were not representative of those in existence at the time of plaintiff's fall.

Krafchik's report concluded that:

> [T]his incident could have been avoided if a slip resistant additive had been incorporated into the Sherwin-Williams product when it was applied . . . in 2016. These additives were available at the time, and for many years before 2016. If used, the additives would have provided the necessary slip resistance to the white paint, and the incident would have been avoided. Similarly, the use of inherently slip resistant paint . . . or the application of texturing or cross-cut grooving would have achieved the necessary result.

During his deposition, Krafchik was not certain on which directional arrow plaintiff had fallen – there were two in the pertinent portion of the travel lane – and he did not know on which part of the arrow she had fallen. In discussing the wet slip resistant testing he conducted, Krafchik stated he did not include it in his report because "the surface which [he] tested was not the same surface as on the date of the accident" because there was one additional coat of paint. However, the testing performed on the arrows in 2019 showed the surface was within the accepted slip resistant tolerance range. Krafchik also did not know what the thickness of the paint was at the time of plaintiff's fall and he did not measure it during his inspection in June 2019.

A-2000-19

In his report and during his deposition, Krafchik relied on a Performance Tip information provided by Sherwin Williams with the "traffic marking paint." The pertinent portion of the sheet stated: "Painted surfaces can become slippery when wet. Traffic paints are not intended for use as floor paints, and should not be used to paint large areas subject to pedestrian traffic. For instance, painting an entire stall is not recommended."

When confronted with literature regarding a slip resistant additive, Krafchik agreed that line striping, parking lot lines, and directional arrows were not included in the list of recommended uses for the additive.

A representative of Sherwin Williams was also deposed. He testified that the paint used by Straight Edge was typically used in parking lots to paint directional arrows and crosswalks and users were not instructed to also use an additive.

Bay Plaza, Pasbjerg, and Sherwin Williams moved for summary judgment. In granting the motions, the motion judge found Krafchik's expert report was net opinion. In an oral decision on September 27, 2019, the judge stated:

> [T]he [c]ourt is compelled to conclude that it's a net opinion. It's his opinion that it's too slippery. He doesn't provide any standards, he doesn't provide any guidelines for a fact-finder to look to in order to

A-2000-19

determine . . . a dangerous quality of paint because of the coefficient of friction. He never bothered to test it. He doesn't know what the paint is when it's brand new. He doesn't know what it's like after it's been used for a while. He only indicates it could be less slippery by doing certain things. But he doesn't indicate that the condition, at the time it was applied, or at the time of the fall, violated a standard of safety. And as a result, you're leaving the fact-finder to speculate as to what might have happened at the time. Accordingly, I'm granting [Bay Plaza and Pasbjerg's] application. I'm going to grant the summary judgment. I find that there is no . . . method for the fact-finder to come to its conclusion, other than speculation.

Thereafter, Straight Edge moved for summary judgment and plaintiff filed a motion for reconsideration. On November 22, 2019, the court granted Straight Edge's motion for summary judgment and denied plaintiff's motion for reconsideration stating: "There's nothing [in the record] to indicate that the condition that was created in the parking lot was unreasonable under the circumstances."

Bay Plaza and Pasbjerg then moved for summary judgment against Straight Edge for indemnification under the clause in their contract. On January 10, 2020, the motion judge denied the motion. The judge noted plaintiff made identical allegations of negligence against all the defendants and the court had found all defendants were free of fault. He stated: "I'm going to deny the application to compel the indemnification under the circumstances where all

parties have been determined to be without fault, and the complaint sets forth the allegation of fault against the property owner [Bay Plaza]."

On appeal, plaintiff asserts the motion judge erred in sua sponte raising the issue of net opinion and the judge could not make that determination without a plenary hearing. Plaintiff further contends her expert's report was not net opinion and it was error to grant summary judgment to defendants.

In their cross-appeal, Bay Plaza and Pasbjerg assert the motion judge erred in denying summary judgment to Bay Plaza on its indemnity agreement with Straight Edge.

We review the grant of summary judgment de novo, applying the same legal standard as the trial court. Green v. Monmouth Univ., 237 N.J. 516, 529 (2019) (citation omitted). Therefore, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

"If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig.

Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citations omitted). We review issues of law de novo and accord no deference to the trial judge's conclusions on issues of law. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

We begin by addressing plaintiff's contentions regarding Krafchik's expert report. "In general, expert testimony is required when 'a subject is so esoteric that jurors of common judgment and experience cannot form a valid conclusion.'" Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 450 (1993) (quoting Wyatt by Caldwell v. Wyatt, 217 N.J. Super 580, 591 (App. Div. 1987)).

Expert opinion must be grounded in "'facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts . . . .'" Polzo v. Cnty of Essex, 196 N.J. 569, 583 (2008) (quoting State v. Townsend, 186 N.J. 473, 494 (2006)). The net opinion rule is a "corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." Ibid. The rule requires that an expert "'give the why and wherefore' that supports the opinion, 'rather than a

mere conclusion.'" Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013) (quoting Pomerantz Paper Corp. v. New Community Corp., 207 N.J. 344, 372 (2011)); see also Buckelew v. Grossbard, 87 N.J. 512, 524, (1981) (explaining that "an expert's bare conclusion[], unsupported by factual evidence, is inadmissible").

The net opinion rule mandates that experts "must be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are scientifically reliable." Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992). An expert's conclusion "'is excluded if it is based merely on unfounded speculation and unquantified possibilities.'" Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997) (quoting Vuocolo v. Diamond Shamrock Chem. Co., 240 N.J. Super. 289, 300, 573 (App. Div. 1990)).

"Given the weight that a jury may accord to expert testimony, a trial court must ensure that an expert is not permitted to express speculative opinions or personal views that are unfounded in the record." Townsend v. Pierre, 221 N.J. 36, 55 (2015). Accordingly, an expert opinion lacking "a proper factual foundation" and "consist[ing] of bare conclusions unsupported by factual

evidence is inadmissible as a net opinion." Anderson v. A.J. Friedman Supply Co., 416 N.J. Super. 46, 74 (App. Div. 2010).

Additionally, "the failure of the expert to explain a causal connection between the act or incident complained of and the injury or damage allegedly resulting therefrom" is a fatal flaw that will bar an expert's opinion. Buckelew, 87 N.J. at 524. The expert must be able to identify an objective, generally accepted standard of practice that would allow the expert's opinion to be relied upon. See Koruba v. American Honda Motor Co., 396 N.J. Super. 517, 526 (App. Div. 2007). Without meeting this basic requirement, "[a]n opinion lacking [in] foundation is worthless." State v. One Marlin Rifle, 319 N.J. Super. 359, 370 (App. Div. 1999).

We disagree with plaintiff's argument that the trial court was required to conduct a N.J.R.E. 104 hearing before finding the expert report was net opinion. "The need for a [Rule 104] hearing is remitted to the trial court's discretion . . . ." Kemp ex rel. Wright v. State, 174 N.J. 412, 432 (2002). "Absent a clear abuse of discretion, an appellate court will not interfere with the exercise of that discretion." Carey v. Lovett, 132 N.J. 44, 64 (1993). In addition, the court did not sua sponte raise the issue of whether the expert report was net opinion—it was raised in the parties' briefs.

11

Here, plaintiff claimed that the painted directional arrow in the parking lot was slippery and therefore a dangerous condition. She did not allege a complicated or unaccepted theory of causation. It was well within the motion judge's province to consider the report and determine its admissibility. Moreover, there was no request made for the court to conduct a Rule 104 hearing. Therefore, we see no mistaken exercise of discretion in the court considering the admissibility of the Krafchik report without a plenary hearing.

We also discern no misapplication of discretion in the trial court's finding of net opinion. It is undisputed that plaintiff required an expert to opine for the jury the nature of the alleged dangerous condition. And plaintiff did retain an expert. However, Krafchik's report failed to explain how the painted directional arrow on which plaintiff stated she fell was actually slippery or dangerous. The report primarily relied on the literature of Sherwin Williams warning consumers that the paint could be slippery when wet, if used as a floor paint or in a large area, such as a traffic stall, subject to pedestrian traffic. Krafchik did not assign any liability to Sherwin Williams in his report. He also conceded that the additives he believed should have been added to the paint were not recommended for use in parking lot striping.

12

In addition, Krafchik inspected the parking lot and the directional arrows in June 2019, almost three years after plaintiff's accident. The expert admitted he was unable to identify either the specific arrow on which plaintiff slipped or what part of the arrow she slipped on. Moreover, as the directional arrows had been repainted in 2018, they were no longer in the same condition as on the night of plaintiff's fall.

Krafchik conducted a visual examination of the directional arrows and performed a slip resistance test. Krafchik admitted the results were within the range of acceptable tolerance for slip resistance but did not include them in the report. The expert also did not measure the thickness of the paint.

The expert report did not include any scientific information, test results, or analysis. It failed to explain or show that the painted directional arrows in the parking lot created a dangerous condition. Rather, it merely speculated that plaintiff's accident could have been prevented if Straight Edge had applied an additive to the paint or textured the paint following application. Because the report only contained bare conclusions, the trial court properly deemed it net opinion and inadmissible. Without expert opinion, plaintiff could not support her allegations of negligence against defendants and the motion judge properly granted summary judgment.

A-2000-19

In their cross-appeal, Bay Plaza and Pasbjerg argue the trial court erred in dismissing their third-party contractual indemnity claim against Straight Edge. They seek indemnification of the fees and costs incurred in defending plaintiff's lawsuit. The clause at issue states:

> [Straight Edge] will indemnify [Bay Plaza and Pasbjerg] and save it harmless from and against any and all claims, actions, damages, liability and expenses in connection with loss of life, personal injury and/or damages to property arising from or out of any occurrence upon, or at the Property, related to [Straight Edge's] performance of its obligations under this contract. In case [Bay Plaza and Pasbjerg] shall, without fault on its part, be made a party to any litigation commenced by or against [Straight Edge], [Straight Edge] shall protect and hold harmless and shall pay all costs, expenses and reasonable attorney's fees incurred or paid by [Bay Plaza and Pasbjerg] in connection with such litigation.

As stated, we give no deference to the trial court's interpretation of the contract. See Manalapan Realty LP v. Twp. Comm. of Twp. of Manalapan, 140 N.J. 366, 378 (1995) (stating "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.").

"The objective in construing a contractual indemnity provision is the same as in construing any other part of a contract—it is to determine the intent of the parties." Kieffer v. Best Buy, 205 N.J. 213, 223 (2011) (citing Mantilla v. NC

Mall Assocs., 167 N.J. 262, 272 (2001)). This court will not "rewrite a contract for the parties better than or different from the one they wrote for themselves." Ibid. (citing Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001)). "Thus, we should give contractual terms 'their plain and ordinary meaning.'" Ibid. (quoting M.J. Paquet, Inc. v. N.J. Dep't of Transp., 171 N.J. 378, 396 (2002)).

However, "[i]f the meaning of an indemnity provision is ambiguous, the provision is 'strictly construed against the indemnitee.'" Ibid. (quoting Mantilla, 167 N.J. at 272). "An ambiguous contract is construed against the drafter." Englert v. The Home Depot, 389 N.J. Super. 44, 58 (App. Div. 2006).

The first sentence of the indemnity clause here states that Straight Edge will indemnify Bay Plaza and Pasbjerg for claims related to the performance of Straight Edge's obligations under the contract. The phrase "related to its performance" is ambiguous, as the provision does not clarify when the performance is complete. The provision could potentially obligate Straight Edge to indemnify for any injury that occurred only while the work was being performed. It could also be read to require indemnification for any injury at any period of time, if a litigant could causally connect it to Straight Edge's work.

The second sentence states that Straight Edge will indemnify Bay Plaza and Pasbjerg if, "without fault on its part", they are made a party to any litigation

A-2000-19

by or against Straight Edge. Again, we find the phrasing imprecise. It is unclear what the parties intended by the use of "without fault on its part." The phrase could mean Straight Edge is obligated to indemnify Bay Plaza and Pasbjerg if they are added to a lawsuit even if Straight Edge is without fault. Or it could mean that Bay Plaza and Pasbjerg were entitled to indemnification even if those entities were found not at fault in the litigation. As stated, any ambiguity goes against the indemnitee and drafter of the clause, here, Bay Plaza and Pasbjerg. See Kieffer, 205 N.J. at 223.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2000-19