**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3590-23

PAUL SOBOTOR,

    Plaintiff-Respondent,

v.

MT. ARLINGTON HOLDINGS, LLC,

    Defendant-Appellant,

and

DOUBLE O LANDSCAPE DESIGN,
LLC,

    Defendant-Respondent.

_____

Argued May 22, 2025 – Decided August 5, 2025

Before Judges Susswein and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-2173-21.

Timothy P. Smith argued the cause for appellant (Kinney Lisovicz Reilly & Wolff PC, attorneys; Kevin E. Wolff, of counsel and on the briefs; Timothy P. Smith, on the briefs).

Deirdre M. Dennis argued the cause for respondent Double O Landscape Design, LLC (Law Offices of Linda S. Baumann, attorneys; Deirdre M. Dennis, on the brief).

PER CURIAM

This case arises from a dispute involving a contract wherein codefendant Double O Landscape agreed to perform snow and ice removal services for an apartment complex owned by defendant Mt. Arlington Holdings, LLC. Mt. Arlington appeals from an order granting summary judgment to Double O Landscape on its cross-claim for indemnification. Based on our de novo review of the record and applicable legal principles, we affirm.

I.

We summarize the pertinent facts from the record in a light most favorable to Mt. Arlington, the non-moving party, as required by Rule 4:46-2. In his complaint, plaintiff Paul Sobotor alleged on February 16, 2021 he was injured in a slip-and-fall accident which occurred in the parking lot of an apartment complex owned by Mt. Arlington. claimed both Mt. Arlington and Double O were negligent by failing to remove snow and ice from the complex's parking lot which caused him to fall and sustain injuries. At the time of the incident, Mt. Arlington and Double O had a written contract which required Double O to supply the "labor and equipment necessary" to perform plowing, shoveling, and

2

salting of Mt. Arlington's parking lot. The contract included two specific paragraphs addressing indemnification. Paragraph two of the contract states in pertinent part:

> During operations and after completion of operations [Mt. Arlington] <u>agrees to indemnify and save harmless [Double O] and its employees against any and all claims by</u> [Mt. Arlington] , it's [sic] employees or <u>third parties</u>, their heirs, executors, administrators, successors, surrogates or assignees, arising on account of death or injuries to persons or damage to property, arising out of use of, or traveling at or onto the property, <u>whether or not such claim [for] damage, injury or death results from negligence of [Mt. Arlington] , [Double O] or others.</u> [Mt. Arlington] shall defend all suits and claims arising from or incidental to the work under the agreement, without expense or annoyance to <u>[Double O]</u> or its employees.
>
> [Emphasis added.]

Paragraph four of the contract states:

> Indemnity: To the fullest extent permitted by law, [Double O] shall be responsible for claims to bodily injury and property damage due to [Double O's] negligent snow plowing work that may arise at [Mt. Arlington's] premises while [Double O] is physically on premises. To the fullest extent permitted by law, [Mt. Arlington] shall defend, indemnify and hold harmless [Double O], its owners, agents, consultants, employees and subcontractors from all claims for bodily injury and property damage that may arise from [Mt. Arlington's] premises including an[y] acts or omissions by [Mt. Arlington] or [Mt. Arlington's] subcontractors whether employed directly or indirectly for ice which forms from day time melting from snow

3

and ice which is removed from, brought in by or in between vehicles.

After a snowfall, Double O performed plowing and salting at the premises until 10:00 p.m. on February 15, 2021. Plaintiff's accident occurred at 4:30 a.m. the next morning. In his deposition, plaintiff testified he was on his way to work when the incident occurred. Plaintiff testified "[i]t was raining" at the time of his fall and there was "about a foot and a half of snow on the ground." He testified he went to the bottom of his apartment steps, took around four steps toward his car and then fell in the parking lot area. The Mt. Arlington Boro Police Department Incident Report states plaintiff advised them that he slipped on ice.

Prior to trial, plaintiff and Double O resolved their dispute. Double O preserved its cross-claim for indemnification against Mt. Arlington. On the first day of trial, with the consent of all counsel, the court held argument on Double O's motion requesting summary judgment on its cross-claim for indemnification against Mt. Arlington.

The primary dispute was whether the indemnification provisions in the contract satisfied the legal requirements of Azurak v. Corporate Property Investors, wherein the Supreme Court held in order to bring a negligent indemnitee within an indemnification agreement, the agreement must

specifically reference the negligence or fault of the indemnitee by explicit and unequivocal language.  175 N.J. 110, 112-13 (2003).

Double O argued the terms of the snow removal contract satisfied the requirements of <u>Azurak</u> and it was entitled to indemnification for its own negligence.  Double O asserted although the contract does not "contain the bright line language of <u>Azurak</u> . . ., it specifically states [Mt. Arlington] would defend [and] indemnify [Double O] for any injury resulting from negligence of [Mt. Arlington], [Double O] or others."

In response, Mt. Arlington argued the contract's two clauses which addressed indemnification failed to specifically require indemnification for Double O's own negligence.  Mt. Arlington contended the two indemnity clauses were inconsistent, confusing, and failed to meet the clear and unambiguous standard required by <u>Azurak</u> to enforce the indemnity provisions in Double O's favor.

The trial court found "the clear and unambiguous language within . . . section four of the indemnity, which is supplemented by paragraph two, to reflect the parties' intentions" that Mt. Arlington is required to indemnify Double O for claims arising from its own negligence and granted Double O's motion for summary judgment.  Thereafter, on the third day of trial Mt. Arlington settled with plaintiff.  The terms of settlement specifically preserved

5

Mt. Arlington's right to appeal the trial court's summary judgment order requiring it to indemnify Double O.

On appeal, Mt. Arlington contends the indemnity provisions in the contract do not require indemnification to Double O for its own negligence because the provisions are not compliant with <u>Azurak</u>. Mt. Arlington asserts paragraph four of the contract requires each party to indemnify the other only to the extent of their respective fault. Mt. Arlington further argues paragraph two of the contract makes no provision for it to indemnify Double O for Double O's own negligence. Lastly, it asserts the inclusion of two contradictory indemnification clauses in the contract render the indemnity provisions ambiguous and unenforceable.

## II.

We review the grant of summary judgment de novo, applying the same legal standards as the trial court. <u>Green v. Monmouth University</u>, 237 N.J. 516, 529 (2019). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." <u>Brill v. Guardian Life Ins. Co. of Am.</u>, 142 N.J. 520, 528-29 (1995) (quoting <u>R.</u> 4:46-2(c)). A genuine issue of material fact exists when "the

6

competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Id. at 540.

The interpretation or construction of a contract is a legal question, reviewed de novo on appeal. Driscoll Constr. Co. v. State, Dep't of Transp., 371 N.J. Super. 304, 313 (App. Div. 2004); see also Celanese Ltd. v. Essex Cnty. Improvement Auth., 404 N.J. Super. 514, 528 (App. Div. 2009) (holding "unless the meaning is both unclear and dependent on conflicting testimony[,]" the court interprets the terms of a contract as a matter of law). In our review, the "trial court's interpretation of the law and legal consequences that flow from" it are "not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)

The court's role "in construing a contractual indemnity provision is the same as in construing any other part of a contract—it is to determine the intent of the parties." Kieffer v. Best Buy, 205 N.J. 213, 223 (2011). Generally, courts give contractual provisions "their plain and ordinary meaning." Ibid. (quoting M.J. Paquet, Inc. v. N.J. Dep't of Transp., 171 N.J. 378, 396 (2002)). "However, indemnity provisions differ from provisions in a typical contract in one important aspect. If the meaning of an indemnity provision is ambiguous, the

provision is 'strictly construed against the indemnitee.'" Ibid. (quoting Mantilla v. NC Mall Assocs., 167 N.J. 262, 272 (2001)).

### III.

### A.

We initially address Mt. Arlington's argument that paragraph two of the contract does not provide for indemnification of Double O for its own negligence. Mt. Arlington contends paragraph two fails to distinguish between Double O's own negligence and the negligence of Mt. Arlington or other entities. Mt. Arlington argues this provision lacks the specificity required under Azurak to compel indemnification to Double O and the trial court erred by finding otherwise. We disagree.

Below, we break down paragraph two of the contract including only the relevant language applicable to the issues on appeal, which provides the necessary clarity.

> During operations and after completion of operations [Mt. Arlington] agrees to indemnify and save harmless [Double O] and its employees against any and all claims by . . . , third parties . . . , arising on account of . . . injuries to persons . . . arising out of use of, or traveling at or onto the property, whether or not such claim [for] . . . injury . . . results from negligence of . . . [Double O] or others.

A-3590-23

We agree with the trial court's interpretation of the indemnity language in paragraph two and conclude it is compliant with the principles set forth in Azurak.

We are unpersuaded by Mt. Arlington's argument that the indemnity language in the contract is similar to the indemnity clauses addressed in Englert v. The Home Depot, 389 N.J. Super. 44 (App. Div. 2006) and Mautz v. J.P. Patti Co., 298 N.J. Super. 13 (App. Div. 1997). In both Englert and Mautz, the courts found neither the terms "to the extent" nor "regardless of" sufficient to satisfy the required "unequivocal" expression of intention required to obligate a party to indemnify another for its own negligence. See Englert, 389 N.J. Super. at 56 (determining neither the phrase "regardless of" nor "to the extent" answered the question of whether the indemnification included the indemnitee's own share of fault); See also Mautz, 298 N.J. Super. at 21 (determining the provision requiring indemnification for injuries "to the extent caused in whole in part by" the negligence of the subcontractor provides indemnification only to the extent of the subcontractor's negligence). Paragraph two of the contract does not include the terms "to the extent" or "regardless of." Instead, paragraph two of the contract used the terms "whether or not." We agree with the trial court this formulation closely aligns with the language in Estate of D'Avila v. Hugo Neu Schnitzer East, 442 N.J. Super 80 (App. Div. 2015).

9

In Estate of D'Avila, we upheld a trial court order requiring indemnification of an indemnitee for its own negligence based on an indemnification provision which explicitly required the indemnitor to indemnify against claims "regardless of whether or not" the indemnitee was at fault. The provision stated:

> "To the fullest extent permitted by law," S&B shall indemnify Hugo Neu "against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of [S&B's work under the contract], including, without limitation, any such claim, damage, loss or expense attributable to bodily injury, . . . caused by the acts or omissions of [S&B], . . . or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by [Hugo Neu]."
>
> [Id. at 116-117 (emphasis added).]

Similarly, the terms of paragraph two of the present contract obligates Mt. Arlington to indemnify Double O for claims "whether or not" the claims arose from Double O's negligence or the negligence of others. We conclude, as we did in Estate of D'Avila, this language supports and requires indemnification for the negligence of the indemnitee, in this case Double O. We therefore reject Mt. Arlington's argument that the "whether or not" phraseology in paragraph two is not clear and unequivocal.

10

B.

We next address Mt. Arlington's contention that paragraph four of the contract is a "mutual indemnity obligation" which requires each party to indemnify the other only to the extent of their respective fault. Mt. Arlington asserts paragraph four does not specify with "explicit language" that it will indemnify Double O for its own negligence, and therefore the indemnity agreement is not "clear, concise, [and] unambiguous under the case law." Mt. Arlington asserts this provision requires only reciprocal indemnification for each party's own negligence. We disagree.

Under our ordinary rules of construction, contract provisions are to be "read as a whole, without artificial emphasis on one section, with a consequent disregard for others." Borough of Princeton v. Bd. of Chosen Freeholders of the Cnty. of Mercer, 333 N.J. Super. 310, 325 (App. Div. 2000).

The trial court found paragraph four

> to be broad and consistent with the other verbiage of paragraph two, indicating that the indemnification would apply even against the contractor's own negligence. While Mt. Arlington is focused on whether the last provision of paragraph four, "whether employed directly or indirectly for ice which forms during daytime melting," that seems to be just a further amplification of what would be included.

11

A-3590-23

The court also found the paragraph to be consistent with Azurak, as the language within the contract and the intention of the parties was "clear and unambiguous." We conclude, as did the trial court, there is no ambiguity, uncertainty or inconsistency between paragraph two and paragraph four when read together. Paragraph two provides general indemnity to Double O from Mt. Arlington including indemnification for Double O's own negligence where paragraph four primarily provides clarity concerning indemnification for claims which may arise from melting ice or snow which re-freezes.

We further note it is not disputed at the time of plaintiff's fall that Double O had completed its work and was not physically on the premises. The disputed contractual provisions require Mt. Arlington to indemnify Double O for claims which arise (1) after its "completion of operations" or (2) when they are not "physically on premises." In sum, we discern no error in the trial court's interpretation of the contract which clearly required Mt. Arlington to indemnify Double O for plaintiff's claim which arose after Double O had completed operations or was not physically on the premises.

Finally, we reject the premise of Mt. Arlington's contention the two "contradictory" indemnity provisions render the contract ambiguous and unenforceable. As we noted in the preceding section, the two indemnification

A-3590-23

paragraphs are not contradictory. Consequently, we conclude Mt. Arlington's contention in this regard is without merit.

To the extent we have not addressed any of Mt. Arlington's remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hasley*

Clerk of the Appellate Division

A-3590-23